113 N.J. Super. 113 (1970)
273 A.2d 65
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MICHAEL MERCURIO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1970.
Decided May 18, 1970.
Before Judges SULLIVAN, CARTON and HALPERN.
*114 Mr. Joseph A. Falcone, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
Mr. Elmer J. Herrmann, Jr., argued the cause for respondent.
PER CURIAM.
The State, pursuant to leave granted, appeals from an order of the county court suppressing evidence seized by the State in a search of certain premises made under a search warrant issued by a municipal judge.
We are here concerned with a situation where the State submitted the information it had obtained as to violation of the gambling laws to a judge who found probable cause to exist and issued a search warrant.
In this situation, State v. Kasabucki, 52 N.J. 110, 117 (1968), admonishes that "Once the judge has made a finding of probable cause on the proof submitted and issued a search warrant, a reviewing court, especially a trial court, should pay substantial deference to his determination."
The State concedes that the affidavit is barely adequate but relies on the holding in Kasabucki, supra, that "* * * when the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." [at 116] The court went on to say:
* * * The affidavits presented to the court on the application should not be examined with a hypertechnical eye. The approach must be a practical and common sense one. It must be engaged in with a consciousness that bookmaking operations are carried on cautiously, furtively and deceptively, and by as many camouflages as human ingenuity can devise. State v. Contursi, supra, 44 N.J., at p. 431. The consideration cannot be a grudging one. Such an attitude would give no weight to the good faith of the police officer in seeking judicial sanction for the search. Moreover, that attitude would probably result in failure to take into account a significant factor, i.e., the officer's experience with bookmaking activities and the factual indications of them. [52 N.J. at 120]
*115 We conclude that the instant matter is controlled by Kasabucki. The police had received information from a reliable informant as to violation of the gambling laws. Surveillance of the premises over a five-day period furnished police with additional facts which they believed sufficiently verified the informant's tip. They submitted the proof they had to a judge who issued the warrant. Our review of the underlying affidavit leads us to conclude that, while the State's proofs were marginal, they were such that a judge could have properly found probable cause for the issuance of a search warrant.
Reversed.
CARTON, J.A.D., (dissenting).
The narrow issue involved here is whether a search warrant resting upon information supplied by an anonymous informer was issued upon probable cause. Both the Fourth Amendment of the United States Constitution and N.J. Const. Art. I, par. 7 insuring the right of people against unreasonable search and seizure make that determination one of constitutional dimension by requiring that such search warrants shall not issue except upon probable cause obtained by oath or affirmation. Such determination is entrusted, not to a police officer, but to a neutral judicial officer who may issue the warrant only after he is "made aware of the underlying facts or circumstances which would warrant a prudent man in believing that the law was being violated." State v. Macri, 39 N.J. 250, 257 (1963).
The United States Supreme Court has enunciated specific requirements which control the issuing judge's review of such warrant applications. The supporting affidavit must contain an adequate recitation of both the underlying circumstances from which the informer concluded the law was being violated and the basis upon which the maker of the affidavit concluded the informer was credible or his information reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, 729 (1964). If the informer's tip *116 fails to satisfy both these requirements, the requirement of probable cause can only be satisfied if, after a scrutiny of the entire affidavit, the corroborative information supplied by the affiant "would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637, 645 (1969).
Viewed in the light of these constitutional requirements, it is clear that the affidavit in this case falls far short of the minimum required for a finding of probable cause.
First, the information supplied by the informer details no underlying circumstances at all which would warrant a belief that gambling was taking place on the premises. The affidavit contains only the following bald conclusion of illegal activity:
[T]wo white males, between the age of 30 to 40 years of age, about 5-9 to 5-11" tall, between 175 lbs. and 195 lbs. usually wearing black car coats are taking horse race bets in their 12 floor apartment at 55 Manor Dr. Newark, N.J. * * *.
From this information, it is impossible to determine whether the informer personally observed the illegal activity, the day or hour it occurred, or whether he personally placed bets at the apartment sought to be searched. Since no underlying circumstances are shown, there is no basis in the supporting document from which the magistrate who issued the warrant could ascertain the validity of the informer's conclusion that the law was being violated. See Spinelli, supra, 393 U.S., at 413, 89 S.Ct., at 587, 21 L.Ed.2d, at 641.
In light of the affidavit's noncompliance with this fundamental requisite,[*] the requirement of a showing of probable *117 cause remains unsatisfied unless further corroboration appears in the remainder of the affidavit. The other parts of the affidavit evidence no criminal activity in corroboration of the informer's allegation.
A check was made of 55 Manor Dr., 12th floor (apt 12M) and it was found that this is occupied by one Frank Cocuzzo and a James Rizzo. My Investigation discloses that two males, so described by the informant arrives [sic] at the apartment with a daily armstrong (scratch sheet) in either one or the other's hand.
Detectives George Thomas, Nicholas Gallicchio and the undersigned made observations on Jan. 18, 20, 21, 22 and 23, 1969 between the hours of 12 noon and 4:30 P.M. During the observation the telephone was called and if the line was not busy, it was then answered by a male (low huskyO [sic] voice just saying "hello." A call was made to the same number after the two men were seen leaving the apartment at 4:40 P.M. and each time there was no answer. From my past experience as a detective assigned to the Investigation Division and Precinct Vice Squad, this is the usual practice of one engaged in bookmaking.
Not only is the conduct observed in the affidavit innocent, but the quality of the observation itself is suspect. Even as to the only aspect of the incident which could have any conceivable relationship to criminal activity  the possession of a "daily armstrong" sheet by the two men described by the informer  the affidavit is significantly vague as to whether Campesi made a personal investigation or relied upon other sources of information. Irrespective of whether the observation was his or that of others, the affidavit omits any detail as to the number of alleged visits by the men. Most important, it is devoid of any correlation between the number of alleged visits and the five-day surveillance.
None of the activities revealed, considered individually or as a composite, can fairly be described as evidencing criminality. Armstrong sheets are readily purchased at news-stands. A sinister connotation cannot be imputed to their mere possession. The allegation that "the telephone was called and * * * answered by a male (low huskyO [sic] voice just saying `hello'" is devoid of corroborative merit. The social amenity of "saying `hello'" has not yet acquired *118 incriminatory connotations. That calls made to the same telephone number  never specifically related to the apartment in question  remained unanswered after the two men left the apartment is meaningless as to probable cause. This is especially so in light of the earlier colorless responses to the callers.
Nor would Campesi's unsubstantiated expertise contribute to a finding of probable cause in this case. Unlike the deponent in State v. Kasabucki, 52 N.J. 110, 122 (1968), the affiant here sets forth no incriminating dialogue with the defendant which, after interpretation by an experienced officer, could create a well-grounded suspicion that bookmaking existed on the described premises. Parenthetically, it may be noted that Campesi never had any contact with defendant prior to the execution of the warrant. In my view the totality of circumstances presented by the affidavit in this case never "reached a higher plane than speculation or conjecture or raw unsupported suspicion," 52 N.J. at 122.
That incriminating evidence may be rendered unavailable in this case because of the absence of probable cause, does not test the constitutionality of its acquisition. As our Supreme Court has recognized, the occasional sacrifice of proof is the price of insuring the "continued effectiveness of the guarantees afforded by the Constitution to all of us as free men," State v. Macri, supra, 39 N.J., at 266.
The effectiveness of the Fourth Amendment guarantee against unreasonable search and seizure rests, in good measure, upon a reviewing court's insistence "that the magistrate perform his `neutral and detached' function and not serve merely as a rubber stamp for the police." Aguilar v. Texas, supra, 378 U.S., at 111, 84 S.Ct., at 1512, 12 L.Ed.2d at 727. In this case the majority recognizes that the State's proof were marginal but nevertheless concludes they constitute an adequate basis for a finding of probable cause. In my view the approval of the issuance of a warrant on such a frail basis demeans the constitutional function entrusted to the magistrate. It sanctions the use of a "blanket" *119 affidavit that renders neutral and perhaps innocent activities an acceptable basis for the issuance of a warrant. Predicated upon the tip of the anonymous informer, this affidavit could justify a search in innumerable innocent situations.
Could the affidavit not have been aptly applied to the search of an apartment occupied by any two ordinary citizens, one of whom spent his vacation enjoying a few days at the races? Is it not true that receptionists uniformly answer telephones by "saying `hello'," sometimes with a husky voice? Is it not normal for occupants to visit their apartments and, in the case of individuals whose employment may be on a shift basis, to do so during daylight hours? Can it be disputed that telephones ringing in empty apartments remain unanswered? Is there any doubt that sports enthusiasts often carry "daily armstrong" sheets on their persons?
By no stretch of the imagination can it be said that corroboration arises from such everyday activities. They contain no suggestion of criminal conduct. They are not rendered suspicious by an unsubstantiated informer's tip. (See Spinelli v. United States, supra, 393 U.S., at 418, 89 S.Ct., at 590, 21 L.Ed.2d, at 645). Conduct otherwise innocent should not be treated as nefarious on the basis of a tip from an anonymous informer.
I would affirm the order suppressing the evidence obtained under the invalid warrant.
NOTES
[*] In view of this failure, it is unnecessary to consider the additional question whether Officer Campesi's affidavit has sufficiently demonstrated the anonymous informer's reliability by a recitation of arrests and convictions attributable to him, thus meeting the second requirement. However, the better practice seems to call for a more detailed description of the arrests and convictions. Cf. State v. Clemente, 108 N.J. Super. 189 (App. Div. 1969).