135 N.J. Super. 472 (1975)
343 A.2d 762
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
TROY POINTER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 1975.
Decided July 11, 1975.
*474 Before Judges MICHELS, MORGAN and MILMED.
Mr. Theodore V. Fishman, First Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Joseph J. Rodgers, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MORGAN, J.A.D.
The essential issue to be determined on this appeal is whether the fruits of a search conducted pursuant to an alleged "oral search warrant" must be suppressed. Subsumed thereunder are the further issues of whether the warrant in the present case was an oral one and, if so, whether in contemplation of state and federal constitutional and procedural law, an "oral search warrant" is the legal equivalent of a written one.
*475 The facts which generate these questions are simple and free from dispute. On March 30, 1973 Detectives Robert Fuller and Joseph Kownacki of the Trenton Police Department applied to a judge of the Superior Court of New Jersey for issuance of a search warrant. The need for the warrant had become apparent within a brief period of time before their appearance, and they lacked the usual prepared affidavits setting forth the facts supporting their application. Instead, they gave sworn oral testimony in the presence of the judge, which was stenographically recorded, later transcribed, and is part of the record on this appeal. R. 3:5-3; R. 3:5-6.
That testimony disclosed that Fuller and Kownacki had just arrested defendant and one Herman Lester for possession of narcotics. At the time of the arrest, defendant was found in possession of a large amount of money in addition to the narcotics found on his person, and a key to Room 1223 of a particular Holiday Inn. The officers retained the narcotics, but perceiving the key to be of no particular significance at the time, permitted defendant to return it to his pocket with his other belongings.
Contemporaneously with the arrest of defendant and Lester, one Jerome "Eyes" Smith was arrested. Smith offered to aid the officers if he would be given a "break." He then informed the officers that defendant had "dope" in one of the hotels, but refused to elaborate further. On a "strip search" of defendant at police headquarters following his arrest Fuller observed that the key he had previously seen was missing. On inquiry as to its whereabouts defendant denied ownership of the key, but told the officer that it was in the police van which had transported defendant to police headquarters. The key was discovered in a well in the rear of the truck where the prisoners had been sitting.
The detectives testified that they then contacted a Robert Bradley, manager of the Holiday Inn, who informed them that Room 1223 was registered to one Troy Pointer, although under an assumed name. Pictures of defendant were taken to Bradley, who then identified defendant as the person to whom *476 the room was registered. Bradley was told to double lock the door to that room and have a public officer posted in front of it. There was no noise from inside the room.
It was on the basis of this sworn testimony that the judge authorized a search of Room 1223 in this Holiday Inn, together with anyone found therein, advising the detectives that a written warrant reflecting his oral authority would be issued within a few days. In fact, the warrant was issued approximately five days after the search, dated March 30, 1973, nunc pro tunc. The same judge who provided the oral authorization for the search sat on defendant's motion to suppress the evidence uncovered in the search, over defendant's objections, and denied the motion. Defendant was later tried and convicted of possession of heroin (count 1) and possession of heroin with intent to distribute (count 3). Count 2 had been dismissed. Defendant was sentenced to the New Jersey State Prison for a term of not less than 6 nor more than 12 years on count 3, and not less than 3 years or more than 5 years on count 1. Both sentences were to be served concurrently.
Preliminarily, we conclude that the testimony given by the officers in support of their application for issuance of a search warrant sufficiently established probable cause for its issuance. Smith's tip, that defendant possessed heroin in an unidentified motel room, standing alone would not have justified issuance of the warrant, although the circumstances in which it was given could have been found by the issuing judge to be suggestive of some reliability. Smith was not an unknown informer. His identity was known and he was giving the tip as a quid pro quo for a desired "break" from law enforcement officials. Had the tip proven valueless, Smith's attempt at lenient treatment would have failed. This factor was an important consideration in the evaluation of Smith's credibility and the reliability of the information, however sketchy, that he imparted. Beyond this, however, the evidence received as a whole provided a "substantial basis" for the court's finding of probable cause. United States *477 v. Harris, 403 U.S. 573, 579-581, 91 S.Ct. 2075, 2079-2081, 29 L.Ed.2d 723, 731-733 (1971). In addition to Smith's information, the judge was informed that defendant had just been arrested with narcotics in his possession; he was also found with a large amount of cash and a motel room key; he first disclaimed ownership of the key, a fact shown to be false by later investigation of the testifying officers, and attempted to hastily rid himself of it by discarding it in the police van; the motel room identified by the key was in fact rented by him, although under a false name, a fact which corroborated, in part, the "tip" given by Smith. Based upon all of this information, the judge correctly found that probable cause for searching the motel room existed. State v. Perry, 59 N.J. 383, 388 (1971); State v. Mercurio, 113 N.J. Super. 113 (App. Div. 1970), aff'd o.b. 57 N.J. 367 (1971).
Defendant next contends that the failure of the judge to issue the customary form of warrant prior to the search impaired his Fourth Amendment right to protection against unreasonable searches and seizures. He takes the position that the search was conducted pursuant to oral authority of a judge, was therefore constitutionally defective and any evidence uncovered therein must, accordingly, be suppressed.
The vice inherent in this argument is that the warrant authorizing the search in this case was not an oral but a written one, albeit not in the customary form. The judge's authorization to search was memorialized, in tangible and written form, on the stenographer's tape, as was the testimony given in support of its issuance. The tape was dated; it memorialized judge's finding of probable cause and authorization to search, specified the persons and places to be searched and what it was to be seized. The stenographer's tape, a "writing" in every sense of the word, therefore, contained the necessary essentials for a valid search warrant, and the failure of the judge to transpose this written authority into the usual form of warrant does not result in having his written warrant deemed an oral one. Although this written warrant *478 was not particularly suitable for serving or filing, these circumstances did not and could not have converted the written warrant into an oral one.
Minor deficiencies in the form of the warrant or with the manner of its use have not resulted in illegal searches with the necessary consequent suppression of the fruits thereof. Failure to file the affidavit and warrant with the office of the county clerk did not require suppression of the evidence uncovered in the search, the requirement for filing being regarded as merely directory. State v. Harris, 98 N.J. Super. 502 (App. Div.), certif. den. 51 N.J. 396 (1968). Error in describing the premises to be searched did not invalidate the warrant when, from other circumstances, the identity of the premises was made clear. State v. Daniels, 46 N.J. 428 (1966). Failure to deliver a copy of the warrant to the party whose premises are being searched until the following day was held not to render the search "unreasonable" in terms of the Fourth Amendment. United States v. McKenzie, 446 F.2d 949 (6 Cir.1971). The fact that an existing warrant is not in the possession of the searching officers at the time of the search does not render the search unlawful requiring the suppression of its results. State v. Johnson, 16 Ohio Misc. 278, 240 N.E.2d 574 (Ohio C.P. 1968) (warrant produced 10 to 15 minutes after search); United States v. Woodring, 444 F.2d 749 (9 Cir.1971) (warrant produced before search ended). The fact that the warrant in this case was not signed does not render the search constitutionally infirm where neither the judge nor the searching officers were aware of this deficiency. Sternberg v. Superior Court of County of Solano, 41 Cal. App.3d 281, 115 Cal. Rptr. 893, 894 (D. Ct. App. 1974).
While the requirement that a search warrant be in writing is implicit in the Fourth Amendment and its counterpart in the New Jersey Constitution (1947), Art. I. § 7, although not expressly set forth therein, the warrant in the present case *479 complies with that requirement.[1] The form of the warrant might have caused a problem had the officers met with a contemporaneous challenge to their authority to search at the motel. It is with respect to such contingencies that possession by the officers of the customary form of warrant at the time of the search is desirable and required by the rules of court requiring service of the warrant on the person whose premises are to be searched. R. 3:5-5. Failure to make the service or leave a copy at the place searched, particularly when not demanded or when the authority to search goes unchallenged, will not, however, invalidate the search if the other prerequisites to a proper search have been met. United States v. McKenzie, supra.
In the specific and unique circumstances of this case we conclude that the search was a lawful one and that none of defendant's Fourth Amendment rights were impaired thereby.
There is not even an intimation that the officer who applied for the warrant was playing fast and loose with the court or desired to obtain a general warrant under the guise of a specific warrant. The police were not guilty of any subterfuge. The police observed the mandate which required them to apply to a judicial officer whose independent judgment stands between the police and the public. [State v. Daniels, supra at 46 N.J. 437-438]
A proper finding of probable cause was made by a judicial officer on the basis of sworn testimony preserved for later review in trial court and appellate proceedings. The premises *480 to be searched was described and the search did not exceed the bounds thereof. A warrant, in customary form, issued within days thereafter. In State v. Romeo, 43 N.J. 188 (1964), cert. den. 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965), the court observed:
The fundamental requirement of the Fourth Amendment is reasonableness. Granting requisite adherence to the basic essentials of that concept assuring proper recognition of the individual liberties sought to be safeguarded thereby, the validity of law enforcement conduct should not be judicially tested by post facto technicalities and formalisms of no vital importance.
Defendant has no just cause for complaint and the motion to suppress the evidence was properly denied.
We do not, however, wish to be understood as condoning the procedure adopted in this case. Departures from normal practice in the issuance of search warrants should be assiduously avoided as productive only of time consuming and costly proceedings thereafter not to mention risk of undermining an otherwise valid conviction. The short amount of time necessary for the judge to have issued a warrant in customary form or to have drafted, even by hand, a basic, bare-bones warrant containing the essentials required by the rules of court would have obviated the later proceedings caused by the failure to take those few minutes. Search warrants must be in writing and every effort should be made to have such warrants conform to the requirements set forth in our rules of court. Laxity in the compliance with these procedures is disapproved.
Defendant's contention that the trial judge who issued the warrant should have disqualified himself, on defendant's request, from determining the motion to suppress is without merit. State v. Smith, 113 N.J. Super. 120 (App. Div. 1971), certif. den. 59 N.J. 293 (1971). We have examined the record together with the presentence report and have concluded that the sentences imposed were not manifestly excessive.
Affirmed.
NOTES
[1] The necessity for a written, as distinguished from an oral, warrant is also apparent in our rules of court designed to implement the search and seizure provision of both the federal and state constitutions. See, e.g., R. 3:5-3 for the requirement that a warrant be "dated" and that it name and describe the person or place to be searched and specify the hours during which it may be executed. R. 3:5-5 requires the searching officer to give a copy of the warrant to the person whose premises are being searched. This provision, too, imports the concept of a search warrant as being a written instrument.