200 N.J. Super. 229 (1985)
491 A.2d 37
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
OTTAVIO NOVEMBRINO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 1984.
Remanded October 19, 1984.
Submitted March 12, 1985.
Decided April 11, 1985.
*231 Before Judges ANTELL,[1] J.H. COLEMAN and SIMPSON.
Susan B. Gyss, Assistant Prosecutor, argued the cause for appellant (Harold J. Ruvoldt, Jr., Prosecutor of Hudson County, attorney; Susan B. Gyss on the brief).
Joseph Charles argued the cause for respondent (Ashley and Charles, attorneys; Joseph Charles of counsel and on the letter brief.
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The novel issue raised on this appeal is whether New Jersey should adopt a good faith exception to the exclusionary rule where evidence is seized pursuant to a search warrant issued without probable cause. On April 9, 1984, the Law Division ordered suppression of evidence seized on June 2, 1983 because probable cause to issue the warrant had not been established. We now affirm that determination. Subsequent to the entry of the suppression order, a good faith exception to the Fourth *232 Amendment exclusionary rule was created on July 5, 1984, by United States v. Leon, 468 U.S. ___, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The State urges reversal of the suppression order based on the good faith exception. We hold that N.J. Const. (1947) Art. I, ¶ 7 precludes a good faith exception to the exclusionary rule where probable cause is not established. Hence, the order of suppression is affirmed.
Defendant was charged under Hudson County Indictment No. 1075-83 with possession of cocaine, phentormine, Diazepam, hashish and marijuana on June 2, 1983, contrary to N.J.S.A. 24:21-20a(1) and (4) and possession of cocaine, phentormine and Diazepam with intent to distribute on the same date, contrary to N.J.S.A. 24:21-19a(1). A motion to suppress evidence pursuant to R. 3:5-7 was filed. Defendant argued that the search warrant relied upon by the State lacked probable cause and was issued after the evidence had been seized. The Law Division judge chose not to rule on whether the warrant was issued after the seizure. Instead, he ordered suppression of the evidence because the affidavit relied upon for issuance of the warrant failed to establish probable cause. We granted the State leave to appeal and remanded the matter for a determination of whether the seizure occurred before the warrant was issued. The remand hearing was conducted on November 14 and 15, 1984. At that hearing it was decided that the warrant was issued before the seizure. We now affirm that finding; the record contains sufficient credible evidence to support that determination. State v. Johnson, 42 N.J. 146 (1964).
On this appeal, the State argues that the affidavit of Det. Higgins established probable cause to believe defendant was illegally dealing in controlled dangerous substances from his Gulf Gasoline Station, located at 827 Broadway, Bayonne, New Jersey. That affidavit provided:
2. The facts tending to establish grounds for issuance of a Search Warrant are as follows:
I received information from an informant who has proven reliable in several investigations (with the information he supplied), that `Otto' above description, *233 is engaged in the illegal sales of cocaine and marijuana. My informant stated that Otto usually keeps the drugs in his gas station at above location. He (informant) also stated that he witnessed `Otto' dealing drugs from his gas station. I, along with Det. Ralph Scianni, conducted a surveillance of subject and his station on Thurs., 6/2/83, between the hours of 3:00 PM and 7:00 PM, and observed Otto meeting with several persons, after leaving his station and making what we believed to be drug transactions. During the surveillance, we observed one person making a transaction with Otto and checked on his vehicle and called the narcotics squad to inquire on his relationship with drugs. They told us that said person has been arrested for cocaine and other violations and they felt that Otto and the other person are involved in drug activity. From the information received from our informant and from our observations, we do feel that a search of Otto's gas station should be conducted for illegal contraband. We checked on ownership of the station and it belongs to Otto who we have presently in headquarters on this investigation. Otto was advised of his rights and refused a search of his station but appeared to be very nervous.
Based on the foregoing affidavit, the Municipal Court Judge of the Bayonne Municipal Court issued a warrant to search the Gulf Gasoline Station and the person of the defendant for evidence of violations of Title 24.

I

PROBABLE CAUSE TO SEARCH
In determining whether the affidavit established probable cause, the Law Division judge stated that he considered the meaning of probable cause as defined in State v. Macri, 39 N.J. 250 (1963). He concluded the affidavit in question was defective under both the two-pronged test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as well as the totality of the circumstances standard announced in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[2] The judge correctly observed that the affidavit contains no information about Det. Higgins' education, *234 training or experience in the investigation of illegal drug activities. He found this was Det. Higgins' first affidavit which did not state (1) when the information was received from the informant, (2) sufficient information to establish past reliability of the informant, (3) facts which would permit the issuing magistrate to determine the basis for the informant's conclusion that he "witnessed Otto dealing drugs from his gas station," and (4) any facts obtained during the surveillance tending to support the conclusion that defendant was dealing drugs from his gas station. Hence, the Law Division judge found the affidavit did not establish probable cause and ordered suppression of the evidence seized.
We agree with the Law Division judge that probable cause was not established. Probable cause is defined as a well grounded suspicion that a crime has been or is being committed. State v. Burnett, 42 N.J. 377, 387 (1964). Here, "the common and specialized experience and work-a-day knowledge of policemen," State v. Contursi, 44 N.J. 422, 431 (1965), could not be considered in determining whether probable cause was established because none was stated in the affidavit. In deciding whether probable cause existed, the Law Division judge utilized a common sense approach in analyzing the totality of the circumstances described in the affidavit. In so doing, he followed the standard approved in State v. Contursi, supra; State v. Schumann, 156 N.J. Super. 563, 566 (App.Div. 1978) and later approved by Illinois v. Gates, supra and reinforced by Massachusetts v. Upton, 466 U.S. ___, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984). The judge concluded that his common sense evaluation of the affidavit and the totality of circumstances presented therein persuaded him to conclude that the informant's veracity, reliability and basis of knowledge had not been established. He further concluded that the results of the surveillance reported in the affidavit only corroborated innocent details rather than alleged criminal conduct. He regarded the two-pronged test of Aguilar and Spinelli as being intertwined *235 with the determination of probable cause in light of the totality of the circumstances.
In view of our careful study of the record in the light of the controlling legal principles, we are also persuaded that probable cause was not established. The sum total of the informant's tip consisted of his assertion that he had witnessed defendant dealing drugs from the gas station without giving any indication of whether the information was stale, State v. Blaurock, 143 N.J. Super. 476, 479 (App.Div. 1976), or just how he concluded defendant was dealing drugs. State v. Fariello, 71 N.J. 552 (1976). That information could be months old and he could have seen a person giving defendant money for petroleum products sold at the gas station, given the nature of that business. State v. Sims, 75 N.J. 337, 350 (1978).
Even more significantly, the affidavit contained mere conclusions with respect to the surveillance which was intended to independently verify what the informant reported. Illinois v. Gates, 462 U.S. at 240, 103 S.Ct. at 2333, 76 L.Ed.2d at 550. The State concedes, and we think correctly, that defendant's nervousness after apprehension was immaterial. The affidavit does not state a single fact to support the conclusion that defendant was engaged in "drug transactions." None of the details of the so called drug transaction were given. The fact that one of the persons who visited the gas station had been arrested for cocaine and other drug violations does not suggest drug transactions were taking place absent more factual details. Former drug offenders as well as saints are entitled to buy lawful goods and services from a Gulf gasoline station. We appreciate the fact that Det. Higgins made his affidavit in haste, but defendant was already in police custody. Also, the issuing judge was called away from his family on a festive occasion to review the application in the parking lot of the City Line Shopping Plaza. Gates nevertheless requires a reviewing court to conscientiously review the sufficiency of the affidavit to insure that wholly conclusory assertions are not countenanced. Proper performance of the role of a neutral and *236 detached magistrate requires more than "a mere ratification of the bare conclusions of others." Illinois v. Gates, 462 U.S. at 239, 103 S.Ct. at 2332, 76 L.Ed.2d at 549.
The affidavit here involved simply revealed that a police informant concluded for unknown reasons that defendant was a drug dealer, that a person previously arrested for possession of cocaine was seen at defendant's gas station engaged in some unspecified activities which caused a detective, whose education, training and experiences are unknown, to conclude that criminal activities in the form of violations of Title 24 were taking place at the gas station. The totality of the circumstances spelled out in the affidavit failed to contain a single objective fact tending to engender a "well grounded suspicion" that a crime was being committed. State v. Burnett, 42 N.J. at 387. We conclude, therefore, that probable cause was not established.

II

THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE
The State next argues that if probable cause was not established, the evidence seized nonetheless should not be suppressed. It urges that the good faith exception to the exclusionary rule enunciated in United States v. Leon, supra, should be retroactively applied to this case. The facts in Leon were very similar to the facts in this case. There, evidence was seized with a warrant later found to have been issued without probable cause. The Court in Leon held that the good faith reliance on the issuing judge's approval of the warrant precluded exclusion of the evidence. The government was allowed to use the evidence seized pursuant to the warrant in its case in chief where there was objectively reasonable reliance on the warrant. Here, defendant argues that the Leon good faith exception should not be applied because (1) it is contrary to the requirements of N.J. Const. (1947), Art. I, ¶ 7, (2) retroactive *237 application of Leon is not permissible, (3) the issuing judge abandoned his detached and neutral role, and (4) the applicant for the warrant did not act in good faith when submitting the affidavit for the warrant. We are satisfied that if Leon is to be followed in this State, it should also be retroactively applied. See State v. Nash, 64 N.J. 464, 469-470 (1974). We are also persuaded from our careful study of the record that Det. Higgins did not knowingly or recklessly submit a false affidavit, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978), and that he objectively and reasonably relied on the warrant. Even though the issuing judicial officer was mistaken in his assessment of probable cause, we are not convinced that he abandoned his detached and neutral role.

A. PROBABLE CAUSE IS AN INDISPENSABLE REQUIREMENT.
Our Supreme Court has determined that N.J. Const. (1947), Art. I, ¶ 7, which provides "... no warrant shall issue except upon probable cause, ..." requires probable cause to conduct a nonconsensual search for evidence of a crime, whether with or without a warrant. State v. Young, 87 N.J. 132, 141-143 (1981). See also State v. Patino, 83 N.J. 1, 7-10 (1980); State v. Ercolano, 79 N.J. 25, 42 (1979); State v. Sims, 75 N.J. 337, 351 (1978); State v. Waltz, 61 N.J. 83, 87 (1972). One possible exception to this rule is where the nonconsensual search for evidence is conducted as an incident to a lawful arrest. There, the need to protect the arresting officer and the probable cause for the arrest justify the search within a permissible scope. State v. Young, supra, 87 N.J. at 142 n. 4. Noncompliance with the probable cause requirement is not a mere sophisticated technicality which can be regarded as insubstantial or a slight departure from our State constitutional and procedural requirements. See State v. Valencia, 93 N.J. 126, 134 (1983). Cf. State v. Bisaccia, 58 N.J. 586 (1971); State v. Daniels, 46 N.J. 428 (1966); State v. Pointer, 135 N.J. Super. 472, 478 (App.Div. 1975), certif. den. 69 N.J. 79 (1975); State v. *238 Gillman, 113 N.J. Super. 302 (App.Div. 1971). Probable cause is the single most important consideration when determining whether an individual's privacy has been invaded unlawfully. Many exceptions to the warrant requirement have developed over the years, but no exception to the requirement for probable cause before conducting a nonconsensual search for evidence of a crime under N.J. Const. (1947), Art. I, ¶ 7 has yet been recognized. It remains the absolute essential to any reasonable search and seizure. Conversely, a nonconsensual search for evidence of a crime which is conducted without probable cause is unreasonable.

B. THE EXCLUSIONARY RULE  ITS PURPOSE AND FUNCTION.
New Jersey had no exclusionary rule prior to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which made the exclusionary rule announced by a unanimous court in the landmark case of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), applicable to state criminal cases. Our State Supreme Court first applied the exclusionary rule on June 4, 1962 in State v. Smith, 37 N.J. 481 (1962), cert. den 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963). In the years following Smith, our Supreme Court has not only applied the exclusionary rule to Fourth Amendment violations, but has held that violations of N.J. Const. (1947), Art. I, ¶ 7 also required suppression of evidence.
Two fundamental purposes for the exclusionary rule are (1) "to compel respect for the constitutional guaranty [of no unreasonable search or seizure] in the only effectively available way  by removing the incentive to disregard it," and (2) to uphold "the imperative of judicial integrity." Elkins v. United States, 364 U.S. 206, 217, 222, 80 S.Ct. 1437, 1444, 1447, 4 L.Ed.2d 1669, 1677, 1680 (1960). But there is still another consideration or reason for the exclusionary rule. It also serves to restore the victims of the unconstitutional searches and seizures *239 to the position they were in before the illegality occurred. See Schroeder, "Restoring the Status Quo Ante: The Fourth Amendment Exclusionary Rule as a Compensating Device," 51 Geo.Wash.L.Rev. 633, 636 (1983). The admission of illegally seized evidence in a criminal trial "has the necessary effect of legitimizing the conduct which produced the evidence, while the application of the exclusionary rule withholds the constitutional imprimatur." Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 1875, 20 L.Ed.2d 889, 901 (1968).

C. DEPARTURE FROM FEDERAL CONSTITUTIONAL INTERPRETATIONS.
It is now well settled that in matters of unreasonable searches and seizures, state courts are free, and indeed even encouraged, to look to the state Constitution to afford greater protection of the privacy interest of the public than afforded under parallel provisions of the federal Constitution. Pruneyard Shopping Center v. Robins, 447 U.S. 74, 78-81, 100 S.Ct. 2035, 2039-2040, 64 L.Ed.2d 741, 750-752 (1980); Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575 (1975); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); State v. Bruzzese, 94 N.J. 210, 216 (1983); State v. Hunt, 91 N.J. 338, 359 (1982); Brennan, "State Constitutions and the Protection of Individual Rights," 90 Harv.L.Rev. 489 (1977); "Developments In The Law-Interpretation of State Constitutional Rights," 95 Harv.L.Rev. 1324, 1361 (1982); Pollock, "The New Jersey Supreme Court's Interpretation and Application of the State Constitution," 15 Rut.L.J. 491 (1984).
There are certain dangers inherent in state courts relying too heavily on state Constitutions to afford greater protection to its citizens. The erosion of national constitutional doctrine is one illustration. We are therefore mindful of the desirability of uniformity between the state and federal courts in the interpretation of parallel constitutional provisions. Divergent interpretations *240 of parallel constitutional provisions should be avoided unless guidelines such as those discussed in State v. Hunt, 91 N.J. at 358-368, justify a departure. There, Justice Handler in a concurring opinion identified the criteria which should be followed when deciding whether to resort to the State Constitution to vindicate rights neglected or curtailed under the federal Constitution. Many of the same guidelines were applied in State v. Williams, 93 N.J. 39, 52-59 (1983).
One such criterion is the structural difference between the Fourth Amendment and N.J. Const. (1947), Art. I, ¶ 7. The Fourth Amendment is part of a general grant of enumerated powers to the federal government. See Gangemi v. Berry, 25 N.J. 1, 7-9 (1957). In contrast, Article I, paragraph 7 of the New Jersey Constitution serves to limit the sovereign power which inheres in the people. State v. Schmid, 84 N.J. 535, 558 (1980). Hence, the language of N.J. Const. (1947), Art. I, ¶ 7 is an explicit affirmation of fundamental rights of privacy; it is a guarantee of those rights and not simply a restriction on them. See Smith v. Penta, 81 N.J. 65, 74 (1979); Gangemi v. Berry, supra.
Another standard outlined by Justice Handler in Hunt that is implicated here is the preexisting body of State law which affords greater protection of personal rights than those guaranteed by the federal Constitution. See State v. Hunt, 91 N.J. at 359; Right to Choose v. Byrne, 91 N.J. 287, 299-301 (1982); State v. Schmid, 84 N.J. at 553-560. In this connection, our State Supreme Court has made clear its intention to afford persons in this State greater protection against unreasonable searches and seizures than afforded by the United States Supreme Court's interpretation of the Fourth Amendment. Notably, in State v. Alston, 88 N.J. 211, 226-230 (1981), Article I, paragraph 7 of our State Constitution was construed to afford standing to more citizens to challenge the prosecutorial use of evidence obtained in violation of the Fourth Amendment than afforded by the Supreme Court in Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); United States v. *241 Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) and Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The Court in Alston relied upon four basic reasons for not following federal precedents: (1) the United States Supreme Court decisions did not afford sufficient protection against unreasonable searches and seizures, (2) the vagueness of the federal standard which could result in an infringement of the right to privacy, (3) State and federal precedents supporting its interpretation of the constitution, and (4) the Court's obligation to make rules affecting the administration of criminal justice. While the responsibility for the latter reposes exclusively with the Supreme Court, N.J. Const. (1947), Art. VI, § 2, ¶ 3, we perceive no reason why we cannot apply the other three reasons to support our determination. Hence, we read Alston as standing for the proposition that persons alleging an unlawful violation of the right of privacy must be afforded a meaningful opportunity to vindicate unreasonable searches and seizures. As Justice Clifford observed earlier, the motion to suppress "is the mechanism specifically designed to afford a defendant his most significant opportunity to participate in a process which vindicates the constitutionally declared right against an unlawful search." State v. Fariello, 71 N.J. at 559. Standing to seek redress is a hollow right unless a meaningful remedy is also available.
State v. Johnson, 68 N.J. 349, 353-354 (1975) is another example of where our Supreme Court diverged from established Fourth Amendment law. In Johnson, the substantive elements of a consent search were defined differently under our State Constitution. There, it was held that knowledge of the right to refuse consent to search is a prerequisite under N.J. Const. (1947), Art. I, ¶ 7, to validate a consensual search even though it is not required for Fourth Amendment purposes as interpreted by Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Following the leadership of Alston and Johnson, we are persuaded that the New Jersey constitutional guarantee affords greater protection from unreasonable *242 searches and seizures than the parallel provision of the federal Constitution.
A third standard suggested by Justice Handler in Hunt which guides us today is this State's history and tradition of affording remedies to individuals whose constitutional rights have been violated. State v. Hunt, 91 N.J. at 366. This history and tradition were vividly traced in Schmid, supra, which stated:
The guarantees of our State Constitution have been found to extend to a panoply of rights deemed to be most essential to both the quality of individual life and the preservation of personal liberty. See, e.g., Levine v. Institutions & Agencies Dept. of N.J., 84 N.J. 234, 244, 249, 258 (1980) (right to an education); id. at 273 (Pashman, J., dissenting); State v. Ercolano, 79 N.J. 25, 30, 34 (1979) (privacy based freedom from `unreasonable searches and seizures'); State v. Slockbower, 79 N.J. 1, 4 n. 2 (1979) (same); State v. Tropea, 78 N.J. 309, 313, n. 2 (1978) (double jeopardy and fundamental fairness); Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 79 (1978) (equal protection); State v. Saunders, 75 N.J. 200, 216-217 (1977) (right of sexual privacy); id. at 224-225 (Schreiber, J., concurring); In re Quinlan, 70 N.J. 10, 19, 40-41, 51 (1976), cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976) (right of choice to terminate life support systems as aspect of right of privacy); State v. Johnson, supra, 68 N.J. at 353 (freedom from `unreasonable searches and seizures'); State v. Gregory, 66 N.J. 510, 513-514 (1975) (double jeopardy and fundamental fairness); Robinson v. Cahill, 62 N.J. 473, 482, 509 (1973), cert. den. sub nom. Dickey v. Robinson, 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973) (Robinson I) (right to an education); Worden v. Mercer County Bd. of Elections, 61 N.J. 325, 345-346 (1972) (right to vote); Cooper v. Nutley Sun Printing Co., 36 N.J. 189, 191, 195-196 (1961) (right of employees to organize and bargain collectively); State v. Hannah 171 N.J. Super. 325, 330 (App.Div. 1979) (right to a public criminal trial inheres in the public); Freedman v. New Jersey State Police, 135 N.J. Super. 297, 300-301 (Law Div. 1975) (freedom of the press); Gray v. Serruto Builders, Inc., 110 N.J. Super. 297, 306-307 (Ch.Div. 1970) (right to be free from racial discrimination); cf. State v. Carpentieri, 82 N.J. 546, 572-573 (1980) (Pashman, J., dissenting) (freedom from `unreasonable searches and seizures'). Contra, Anderson v. Sills, 143 N.J. Super. 432, 442 (Ch.Div. 1976). [State v. Schmid, 84 N.J. at 555-556].
Also see So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983) (obligation of municipality to provide housing opportunities for lower income groups); Right to Choose v. Byrne, 91 N.J. 287 (1982) (enhanced equal protection accorded individual right to health and privacy); State v. Hunt, supra (the individual's protectible privacy interest in long distance toll *243 records); State v. Schmid, supra (right of free speech on private university campus); State v. Gilmore, 199 N.J. Super. 389 (App.Div. 1985) (the State's use of peremptory challenges in a criminal case must be free of racial discrimination).
Significantly, where each of the foregoing constitutional violations occurred, the courts of this State "have not hesitated to recognize and vindicate individual rights under the State Constitution" by providing meaningful remedies. State v. Williams, 93 N.J. at 57. Those were provided in recognition that "the State Constitution imposes upon the State government an affirmative obligation to protect fundamental individual rights," State v. Schmid, 84 N.J. at 559, which are guaranteed by our State Constitution. All of these rights have been deemed essential to both the quality of individual life and the preservation of personal liberty.
As previously noted, the law of this State has evolved to the point where nonconsensual searches for evidence of a crime without probable cause are per se unreasonable and violative of N.J. Const. (1947), Art. I, ¶ 7. The exclusionary rule, as a meaningful remedy for abuse, has been part of the tradition and history of this State since 1961. To now permit the State to use in its case in chief evidence seized without probable cause would allow a substantial constitutional wrong to be suffered. That would violate a longstanding tradition of this State of providing meaningful remedies for major constitutional violations.

D. WHY NO GOOD FAITH EXCEPTION.
In the history of the State, our courts have not recognized any exception to the probable cause requirement in order to conduct a nonconsensual search for evidence of a crime, whether the search is conducted with or without a warrant. The "[c]ourts in this State consistently have maintained that strict adherence to the protective rules governing search warrants is an integral part of constitutional armory safeguarding citizens *244 from unreasonable searches and seizures." State v. Valencia, 93 N.J. at 134. The Leon good faith exception eliminates any meaningful review of probable cause determinations. Long experience with the suppression rule leaves us with the settled conviction that once the police act under cover of a warrant, even though issued without probable cause, as a practical matter their good faith is immune to attack. The Leon good faith exception contemplates that appellate courts defer to trial courts and trial courts defer to the police. It fosters a careless attitude toward details by the police and issuing judicial officers and it even encourages them to attempt to get away with conduct which was heretofore viewed as unconstitutional.
The most compelling reason to exclude from the State's case in chief evidence seized without probable cause is to protect the integrity of our State criminal trials. The integrity of the criminal justice process is vital in this State. State v. Czachor, 82 N.J. 392, 404 (1980); State v. Wagner, 180 N.J. Super. 564, 567 (App.Div. 1981); State v. Sugar, 84 N.J. 1 (1980); State v. Vinegra, 73 N.J. 484 (1977). By admitting evidence unconstitutionally seized, the courts condone this lawlessness and in the process dirty their hands with the unconstitutional spoils.
To summarize, today we hold that N.J. Const. (1947), Art. I, ¶ 7 precludes a good faith exception to a nonconsensual search and seizure conducted without probable cause. The decision in Leon represents a serious curtailment of the Fourth Amendment rights of the individual. But under the broader protection guaranteed the individual under our State Constitution, the State is not permitted to introduce evidence in its case in chief which has been seized without probable cause. The admission of that evidence would not only violate N.J. Const. (1947), Art. I, ¶ 7, but would violate the integrity of the court and the State's long tradition of providing a meaningful remedy to redress constitutional violations. Those who govern and those who are governed must all obey the law; ignorance of the law excuses neither the law breaker, the law enforcer nor the *245 administrator of the law. In the circumstances presented, our State Constitution precludes a good faith exception to the exclusionary rule where no probable cause existed to search for evidence of a crime.
The order of suppression is accordingly affirmed.
SIMPSON, J.A.D., concurring.
The affidavit, search warrant, and seizure involved in this case were dated or occurred on June 2, 1983  six days before Illinois v. Gates, supra, which was decided on June 8, 1983, and more than a year before United States v. Leon, supra, which was decided on July 5, 1984. The testimony on the motion to suppress was taken on March 28, 1984 and the Law Division judge ruled against the State on April 9, 1984. He found lack of probable cause for the issuance of a valid search warrant under both the "two-pronged" test established in Aguilar v. Texas, supra and Spinelli v. United States, supra, and the "totality of the circumstances" test set forth in Gates. I join with the majority in upholding the suppression of the evidence based upon lack of probable cause.
In my view, however, the present posture of this case precludes any appellate inquiry as to whether the search warrant was validly issued under the "good faith" exception to the exclusionary rule announced by the United States Supreme Court in Leon. The exception to the Fourth Amendment requirement of probable cause for the issuance of a valid warrant to preclude an unreasonable search and seizure requires objectively reasonable reliance by the police on a warrant issued by a detached and neutral magistrate. Massachusetts v. Sheppard, 468 U.S. ___, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). In Leon, supra, 468 U.S. at ___, 104 S.Ct. at 3411, 82 L.Ed.2d at 686, Justice White noted that the trial court found that the police officer "acted in good faith", while in the present case Judge Grossi did not address this crucial issue. Although raised in the briefs on appeal that were filed after Judge Grossi's suppression *246 decision (because Leon had been decided in the interim), there was no finding of fact as to "good faith" at the subsequent hearing on November 14-15, 1984 or in the judge's January 17, 1985 Order on Remand because he concluded that our order of October 19, 1984 limited the remand "to determine the issue of whether the search and seizure was before or after the issuance of the warrant." That issue had been raised initially by the defendant and on the remand the judge found that the search warrant was in fact issued before the search and seizure. Even assuming the Leon doctrine is retroactive, which is doubtful[1], I believe that a complete record should be made at the trial level, including a factual determination as to good faith, prior to appellate consideration of such issue. Even on the limited record before us, it is evident that additional proofs might have been proffered if our remand had been broader.
A complete record will also enable this court, and ultimately the New Jersey Supreme Court, to better determine whether and how broad a good faith exception to the exclusionary rule may be found under the particular circumstances of a case, pursuant to our N.J. Const. (1947), Art. I, ¶ 7 counterpart to the Fourth Amendment. It seems clear that the parameters of the Leon doctrine will have to be determined on a case-by-case basis, and the same may be true when a question arises under our New Jersey constitutional protection against unreasonable searches and seizures. Although our state constitution has on occasion been relied upon to reach conclusions contrary to the United States Supreme Court on congruent issues, Justice Schreiber noted in State v. Hunt, 91 N.J. 338, 344-345 (1982):
Though notions of federalism may seem to justify this difference [as to whether toll billing records are entitled to Fourth Amendment protection], enforcement of criminal laws in federal and state courts, sometimes involving the identical episodes, encourages application of uniform rules governing search and seizure. *247 Divergent interpretations are unsatisfactory from the public perspective, particularly where the historical roots and purposes of the federal and state provisions are the same.
I therefore conclude that (1) the question of the police officer's good faith should first be determined by a trial judge at an evidentiary hearing on such issue, (2) this fact issue should initially be addressed in the light of the Fourth Amendment, Leon, and any other federal constitutional guidelines, and (3) any consideration as to whether there is a good faith exception to the exclusionary rule under Art. I, ¶ 7 of the New Jersey Constitution should be deferred until an appropriate case is presented where suppression has been denied on federal constitutional "good faith" grounds. I do not join in Part II of the majority opinion and the unnecessarily broad dicta that:
1. "The Leon good faith exception eliminates any meaningful review of probable cause determinations." (Page 244).
2. "The Leon good faith exception contemplates that appellate courts defer to trial courts and trial courts defer to the police." (Page 244).
3. "N.J. Const. (1947), Art. I, ¶ 7 precludes a good faith exception to a nonconsensual search and seizure conducted without probable cause." (Page 244).
NOTES
[1] Judge Antell's name mistakenly appeared on our earlier decision. He did not participate in the oral argument. Counsel have consented to his participation in the final decision.
[2] We find it unnecessary to decide whether Gates, which was decided eight days after the warrant in the present case was issued and executed, should be retroactively applied. We have found the affidavit defective under pre and post Gates standards.
[1] United States v. Leon, supra, 468 U.S. at ___ n. 7, 104 S.Ct. at 3436 n. 7, 82 L.Ed.2d at 710 n. 7 (Brennan, J., dissenting); State v. Howery, 80 N.J. 563, 568-571 (1979), cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979).