**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2449-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHRISTOPHER T. CONZOLA,

     Defendant-Appellant.

_____

> Argued April 5, 2022 – Decided July 27, 2022
>
> Before Judges Fasciale and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment Nos. 19-12-0966, 20-11-0588 and 20-11-0589.
>
> Timothy J. Foley argued the cause for appellant (Law Offices of Christopher G. Porreca, PA, attorneys; Timothy J. Foley, of counsel and on the briefs; Christopher G. Porreca, on the briefs).
>
> Tiffany M. Russo, Assistant Prosecutor, argued the cause for respondent (Robert J. Carroll, Morris County Prosecutor, attorney; Tiffany M. Russo, on the brief).

PER CURIAM

Following the trial judge's denial of his motions to suppress evidence seized pursuant to a search warrant and for a <u>Franks</u>[1] hearing to invalidate the search warrant, defendant Christopher T. Conzola pled guilty under two separate indictments to third-degree false public alarm, N.J.S.A. 2C:33-3(a)(1)(a), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(b)(ii). As part of his plea, defendant reserved the right to appeal the denial of his motions. We affirm.

I.

On a late September morning in 2019, the Montville Township Police Department received a 911 call from a man identifying himself as "[T.B.]"[2] reporting that a gang member and a military general named "[R.K.]," both armed with a weapon, were holding hostages inside a neighbor's house across the street from his home. The caller also reported that he unsuccessfully attempted to rescue the hostages and requested that police officers meet him near the mailbox in front of the neighbor's home.

---

[1] <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

[2] We use initials to protect the privacy of the individuals identified by defendant alleged to be a witness or committing crimes.

A-2449-20

Police officers were dispatched to the neighbor's home where they observed a broken storm glass door and orange juice spilled near the entry. While they surveilled the area, a neighborhood resident called 911 reporting she saw defendant was walking down the street carrying two large knives. Another person also called 911 stating she saw defendant walking down the street and throw something at the house where the hostages where allegedly held. Defendant was reportedly seen entering his own house. The police dispatcher called "[T.B.]" back and recognized defendant's voice based on prior interactions with him.

Local police were familiar with defendant's criminal past. Over four years earlier, on March 24, 2015, defendant was alleged to have restrained a woman inside her home. Police searched defendant's person and found methamphetamine, and a search of his home uncovered child pornography. Then on April 14, defendant was alleged to have held a woman hostage at knifepoint inside his home. In December 2015, defendant was convicted of third-degree criminal restraint, N.J.S.A. 2C:13-2(a), for the April 14 incident; third-degree possession of controlled dangerous substance (CDS) (methamphetamine), N.J.S.A. 2C:35-10(a)(1); and third-degree endangering the welfare of a child (possession of child pornography), N.J.S.A. 2C:24-4(b)(5)(B),

for the March 24 incident. Defendant was sentenced to an aggregate prison term of six years. He was released on May 1, 2019, about four months before the incident in question.

Police unsuccessfully tried to contact defendant at his home by telephoning him and knocking on his door, but there was no response. In the meantime, the residents of the neighbor's home returned to their house and informed police there were no hostages in their home nor was there a "[R.K.]" staying with them. By that time, multiple law enforcement officers arrived in the neighborhood; they evacuated neighboring homes and blocked off the street in the immediate area of defendant's home from vehicular traffic. When defendant did not respond to police's attempts to contact him, they breached his home, finding him in the bathroom. The police took him into custody, confiscating a cellphone and defendant's wallet that were located outside of the bathroom.

Defendant was transported by ambulance to the hospital for psychiatric screening. While Montville Township Police Officer Anthony Condurso was riding along and during the four hours he spent with defendant in the hospital, defendant made several unprompted, spontaneous statements and utterances on various topics, including governmental technology, safe word colors, and

revenge "to an imaginary audience that he identified as C.P."[3] Defendant mentioned how he uses multiple blends of crystal methamphetamine and had used a blue blend of the drug earlier that day. He stated he was walking around with a knife to "save 'the girls' . . . held hostage at [the neighbor's home]" and was willing to "go into danger" to show how much he loved "his girls." Occasionally, he cried out about "his girls," especially C.P., and then detailed conversation about his "true love" for her and how he was on a journey to find and save her.

Without mentioning specific details, defendant also made statements about child erotica and child pornographic videos, stating he found twelve to sixteen-year-old girls beautiful and wanted to turn them into "shape shifters." He explained that if he could develop shape-shifting technology to transform a thirty-three-year-old woman into a twelve or fifteen-year-old girl, he could engage in consensual sex with her without legal repercussions.

Defendant was charged in complaint warrants with criminal mischief, N.J.S.A. 2C:17-3(a)(1); second-degree false public alarm, N.J.S.A. 2C:33-3(a)(1)(b); possession of CDS, N.J.S.A. 2C:35-10(a)(1); and possession of drug paraphernalia, N.J.S.A. 2C:36-2.

---

[3] C.P. is a women defendant had previously dated.

A-2449-20

On October 9, 2019, Judge Robert M. Hanna issued an order authorizing a search warrant for defendant's home. The warrant was based on an affidavit by Montville Township Sergeant Eugene Byrnes, stating that "[b]ased on [his] training and experience, as well as [defendant's conduct and statements on September 19]," he "ha[d] probable cause to believe . . . that a search of [defendant's] residence . . . w[ould] reveal evidence of criminal activity," specifically that "a review of electronic devices and media may reveal evidence of possession of child pornography or attempts and/or planning by [defendant] to obtain same." In executing the search warrant, the police seized twelve small bags of a white rock-like substance; two small bags of a clear crystal substance, both believed to be methamphetamine; drug paraphernalia; and electronic devices, including a cellphone and a computer.

A grand jury subsequently returned Indictment No. 19-12-0966, charging defendant with second-degree false public alarm and third-degree possession of CDS (methamphetamine). The indictment was later amended to charge defendant with second-degree endangering the welfare of children, N.J.S.A. 2C:24-4(b)(5)(b)(ii), after forensic examination of defendant's electronic devices revealed approximately 9,000 images of child pornography.

Defendant filed motions to suppress evidence, for a <u>Franks</u> hearing, and to dismiss Indictment No. 19-12-0966. Judge Hanna only granted defendant's request to dismiss the charge of second-degree false public alarm.[4]

II.

Before us, defendant argues:

> POINT I
>
> THE TRIAL COURT ERRED BY UPHOLDING THE SEARCH WARRANT BECAUSE THERE WAS NO PROBABLE CAUSE TO SEIZE OR TO SEARCH DEFENDANT'S COMPUTER.
>
> POINT II
>
> THE COURT ERRED BY NOT HOLDING A <u>FRANKS V. DELAWARE</u> HEARING BECAUSE DEFENDANT MADE A PRIMA FACIE SHOWING FALSE STATEMENTS AND/OR OMISSIONS WERE MADE IN THE APPLICATION FOR THE SEARCH WARRANT.

Having duly considered these arguments, we affirm substantially based on the well-reasoned analysis of Judge Hanna expressed in his oral opinion.

---

[4] Although not raised in defendant's motion papers, Judge Hanna addressed defendant's contention at oral argument regarding "whether the judge who issued a search warrant can then hear a motion to suppress . . . attacking the warrant." Citing our rulings in <u>State v. Smith</u>, 113 N.J. Super. 120, 137-138 (App. Div. 1971) and <u>State v. Pointer</u>, 135 N.J. Super. 472 (App. Div. 1975), the judge found that "there's established law . . . that judges who issue[] search warrants can hear [arguments on] those motions."

A-2449-20

The record demonstrates that the State's warrant application was based on adequate facts indicating defendant's involvement in criminal activity. Defendant failed to surmount his "burden of proof to establish a lack of probable cause 'or that the search was otherwise unreasonable.'" State v. Boone, 232 N.J. 417, 427 (2017). As the judge correctly determined, defendant's statements, "which [were] admissions," pertaining to desiring sex with minors and substance abuse were entitled "great" and "certainly sufficient" weight when colored by his prior convictions of possession of CDS and child pornography, and thus were sufficient to establish probable cause for all three offenses. The court noted that

> within a matter of a few months of [defendant's] release from prison he succumbed to one of the things that had sent him to prison, that [he] was using methamphetamine, and also . . . disclosed his fixation on another thing that sent him to prison, which was child erotica and pornography, as well as saying that he had a desire to have sex with minor girls . . . .

In addition, Byrnes's supporting affidavit properly indicated the place to be searched and the items to be seized, namely "defendant's electronic devices—phones, computers, etc., any and all [CDS] . . . , and including specifically methamphetamine, and any related paraphernalia and any documentation relating to those things."

A-2449-20

In denying defendant's request for a Franks hearing, the judge did not abuse his discretion. See State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). Defendant failed to show that Byrnes's affidavit contained deliberately false information with reckless disregard for the truth or demonstrate that the affidavit omitted material facts for the judge's determination in deciding to issue the search warrant. See State v. Sheehan, 217 N.J. Super. 20, 23, 25 (App. Div. 1987).

We, like the judge, do not conclude that the affidavit's omission of the full breadth of defendant's admittedly "delusional" ramblings, ranging from Star Trek to Godzilla to former President Donald Trump, would have been material to the judge's decision making and would have ultimately led him to reject the search warrant request. Byrnes's affidavit acknowledged that defendant's statements were under the influence of drugs, thereby causing the judge to reason that defendant's intoxication made some of his statements "clearly irrational, bizarre, and not based in reality." Yet, as the judge held the drugs loosened defendant's tongue "and just completely remov[ed] [his] inhibitions that otherwise might have been present," and thus there was a sufficient basis to authorize the search warrant for drugs and child pornography given his prior convictions. While the omitted facts would have made the affidavit more

9

colorful, the determination of probable cause to issue the search warrant would have remained the same. Hence, we discern no basis to upset the judge's order denying defendant's motion for a <u>Franks</u> hearing.

To the extent any other arguments might be gleaned from defendant's brief on appeal, they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2449-20