275 N.J. Super. 410 (1994)
646 A.2d 482
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DONALD SALENTRE, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 5, 1994.
Decided July 25, 1994.
*412 Before Judges BRODY, STERN and KEEFE.
Susan L. Reisner, Acting Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).
Maryann K. Bielamowicz, Mercer County Prosecutor, attorney for respondent (Michelle Tribuiani Rotella, Assistant Prosecutor, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant was charged in three counts of a twenty-four count indictment with conspiracy to receive and fence stolen property, N.J.S.A. 2C:5-2 (count one), theft by receiving stolen property, N.J.S.A. 2C:20-7 and 2C:2-6 (count two), and fencing, N.J.S.A. 2C:20-7.1 and 2C:2-6 (count three). The charges alleged offenses occurring between April 28, 1982 and April 27, 1987, and aggregating more than $75,000 and, hence, were second degree crimes, N.J.S.A. 2C:5-4a, 2C:20-2b(1)a. However, by order entered on December 15, 1989, the second and third counts were "amended to reflect a shortened alleged time period of April 10, 1987 to April *413 27, 1987 and to reflect a reduced stolen property value of over $500." Hence, counts two and three, as amended, embodied third degree crimes. N.J.S.A. 2C:20-2b(2)a. The judge declined to so amend the conspiracy count which related to defendant, his father and twenty other co-defendants. Only defendant and his father were charged in counts two and three.
Defendant was convicted on the three counts and sentenced to seven years in the custody of the Commissioner of the Department of Corrections on count one. He was also fined $7,500. The other convictions were merged into count one.[1]
On this appeal defendant argues:
POINT I THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT SHOULD HAVE BEEN GRANTED.
POINT II THE DENIAL OF THE DEFENDANT'S MOTION TO RECUSE THE COURT WAS ERROR.
POINT III THE DEFENSE ATTORNEY'S MOTION TO BE RELIEVED AS COUNSEL SHOULD HAVE BEEN GRANTED.
POINT IV THE ADMISSION INTO EVIDENCE OF ITEMS NOT PROVEN TO BE STOLEN WAS ERROR.
POINT V CERTAIN CONDUCT BY THE PROSECUTOR WAS IMPROPER AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL.
POINT VI IT WAS ERROR FOR DETECTIVE O'DONNELL TO GIVE EXPERT TESTIMONY REGARDING A FENCING OPERATION AT TRIAL.
POINT VII THE ADMISSION OF TESTIMONY REGARDING TAPED CONVERSATIONS NOT ADMITTED INTO EVIDENCE WAS ERRONEOUS.
POINT VIII CERTAIN TESTIMONY WAS ADMITTED INTO EVIDENCE IN VIOLATION OF THE HEARSAY RULES AND EVID. R. 4. (partially raised below).
POINT IX THE COURTS REFUSAL TO ALLOW THE DEFENDANT TO PLEAD GUILTY PURSUANT TO A PLEA AGREEMENT WITH THE STATE WAS ERRONEOUS.
POINT X THE DENIAL OF THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL WAS ERRONEOUS.
POINT XI THE SENTENCE IMPOSED UPON THE DEFENDANT WAS EXCESSIVE AND SHOULD BE REDUCED. (not raised below).

*414 POINT XII THE AGGREGATE OF ERRORS DEPRIVED THE DEFENDANT OF A FAIR TRIAL. (not raised below).
Defendant was tried alone. The proofs included tape recorded conversations as well as video and audiotaped transactions. While the recorded transactions were not produced on the appeal or made available for our review, we have no hesitation in concluding, based on the references to them and the other testimony, that the proofs were strong. A composite tape of twenty-nine recorded conversations, fifteen of which allegedly implicated defendant, were admitted into evidence. The nature of the investigation, including the surveillance tapes and recordings made, was detailed to the jury. Several witnesses testified as to stealing goods for defendant and his father and selling them to the Salentres. Other witnesses testified that they purchased stolen goods from defendant and his father.
Co-defendant Sheldon Seavey testified that he had purchased "literally thousands" of dollars in stolen property from both Salentres over a four year period, and co-defendant Rose Gankiewicz testified that she made substantial money by shoplifting what the Salentres, including defendant, said they "needed." Similarly, co-defendant Joanne Ottaviani testified that she would "take an order for stolen property from Mr. Salentre Junior" and sell the stolen goods to him. She also observed him selling stolen merchandise. Charles Runyon testified that he delivered to the Salentres $2,000-$3,000 in stolen goods on a "daily basis" and was often paid by defendant. Similarly, Michael McGee purchased stolen property for both Salentres and was occasionally paid by defendant.
We find no basis for disturbing the convictions or sentence and no need for extended consideration of the issues, R. 2:11-3(e)(2), except as noted herein. In essence, defendant challenges actions which constituted reasonable exercise of the trial court's discretion or errors which were remedied by the judge's limiting or curative instructions. In any event, any error was harmless by virtue of the strength of the proofs.

*415 I.
The defendant contends that the trial judge erroneously rejected a negotiated plea to third degree conspiracy and did so in violation of R. 3:9-3. On April 17, 1990, after a conference in chambers, the judge placed the following on the record:
In short, there had been numerous discussions concerning plea agreements in this case. This Court at one time had discussed with counsel the maximum sentence of four years. The prosecutor had indicated a willingness to accept a third degree plea, and the Court here is of the opinion that while it will accept a plea, it will be only to a second degree charge and will abide by the maximum four-year sentence. The reason for that is this, that if the Court were to accept the plea to a third degree charge with a maximum of four years, in effect, the Court would be in a position of not only permitting the downgrade of the charge, but then, also, being in the position of finding that it would have to impose a sentence presumptively of non-incarceration. So, there is a miscommunication. The Court will accept a plea to a second degree offense, the defendant to be sentenced as a third degree offender. What that effectively does is this. It removes from the Court the obligation to justify the four-year sentence and places upon the defendant the obligation or the burden to justify good cause why he should be placed on probation as opposed to receiving a presumptive sentence.
The judge's statement of the law is correct. The presumption of imprisonment continues, and the presumption against imprisonment does not apply, on the downgrading of a second degree crime to third degree for sentence purposes; the presumption against imprisonment would apply to a first offender if the plea is to a third degree crime. See N.J.S.A. 2C:44-1d, e; 2C:44-1f(2); State v. O'Connor, 105 N.J. 399, 404-05, 522 A.2d 423 (1987); State v. Partusch, 214 N.J. Super. 473, 476-77, 519 A.2d 946 (App.Div. 1987).
After the plea was rejected defendant moved to disqualify the judge because he "prejudg[ed]" defendant "as to guilt." In denying the motion the judge further explained the basis for his rejection of the plea:
The discussion was over whether he would receive  whether he would get jail time or not. That was the nub of the dispute. It really wasn't second degree or third degree. It was jail time and the question was: How do you get there?
....
... And the only way you get there was a second degree offense because there's a presumption of incarceration or he could plead guilty to a second degree and be *416 sentenced as a third degree offender. But the nub of the entire dispute between the State and the defendant Salentre, Jr. was over whether he would get jail time or whether he would get probation. (Emphasis added.)
Defendant argues that a judge cannot reject a plea offer because of his or her belief that a defendant must receive custodial time, or serve a particular sentence, until he reviews the presentence report. Defendant further asserts that the second degree conviction must be "vacated" because the judge did not follow the dictates of R. 3:9-3 regarding plea discussions.
The record does not reflect that any plea agreement had, in fact, been reached. We must assume that if a negotiated disposition had actually been reached, it would have been entered pursuant to R. 3:9-3(b). Furthermore, there was no disagreement with the judge's statement on the record on April 17, 1990 that "a plea bargain has not been reached." It appears that the prosecutor was willing to accept a plea to a third degree crime, but it does not appear that she was willing to recommend a maximum sentence of less than four years. Moreover, and quite significantly, the record does not reflect that defendant was willing to enter a plea of guilty even to a third degree crime while exposed to a state custodial sentence, much less to a five year maximum. Hence, there is no evidence in the record of the necessary meeting of the minds essential to a negotiated plea. See e.g., State v. Thomas, 61 N.J. 314, 321-22, 294 A.2d 57 (1972); see also State v. Warren, 115 N.J. 433, 442-481, 558 A.2d 1312 (1989); State v. Taylor, 80 N.J. 353, 361-64, 403 A.2d 889 (1979); State v. Jones, 66 N.J. 524, 525-26, 333 A.2d 529 (1975).[2]
*417 To the contrary, the parties may have agreed that defendant would plead guilty to a third degree crime, but apparently did not enter a negotiated plea disposition under R. 3:9-3(b) in the absence of an agreement as to sentence maximum or that no specific sentence maximum would be recommended. In any event, the parties by consent could discuss with the judge any "tentative agreement" they had reached or obtain the judge's view as to "maximum sentence" he might impose if defendant entered a plea to a third degree crime. R. 3:9-3(c) provides:
Disclosure to Court. On request of the prosecutor and defense counsel, the court in the presence of both counsel may permit the disclosure to it of the tentative agreement and the reasons therefor in advance of the time for tender of the plea or, if no tentative agreement has been reached, the status of negotiations toward a plea agreement. The court may then indicate to the prosecutor and defense counsel whether it will concur in the tentative agreement or, if no tentative agreement has been reached and with the consent of both counsel, the maximum sentence it would impose in the event the defendant enters a plea of guilty, assuming, however, in both cases that the information in the presentence report at the time of sentence is as has been represented to the court at the time of the disclosure and supports its determination that the interests of justice would be served thereby. If the agreement is reached without such disclosure or if the court agrees conditionally to accept the plea agreement as set forth above, or if the plea is to be based on the court's conditional indication about the sentence, all the terms of the plea, including the court's concurrence or its indication concerning sentence, shall be placed on the record in open court at the time the plea is entered. Nothing in this Rule shall be construed to authorize the court to dismiss or downgrade any charge without the consent of the prosecutor.
R. 3:9-3(b) relates to a negotiated disposition the details of which the parties have agreed to with regard to dismissal of charges and/or sentence. R. 3:9-3(c) relates to matters where the parties cannot agree as to detail, or otherwise seek the judge's reaction before being placed on the record. As Judge Pressler has explained with regard to R. 3:9-3(c):
The fact that this paragraph of the rule requires that an agreement conditionally approved in advance by the court be placed on the record in open court at the time the plea is entered clearly contemplates that the conditional approval discussions may take place off the record and in chambers. That this is, in fact, the intention of the rule is made clear in the Committee Report, supra [122 N.J.L.J. 97 (1988)]. It should be pointed out further that in the Committee's view, the use of the conditional approval technique should be reserved only for those special cases in which counsel, having agreed between themselves, have reason to believe that there may be substantial doubt as to the court's attitude to the agreement.
[Pressler, Current N.J. Court Rules, Comment 4 to R. 3:9-3.]
*418 R. 3:9-3(c) contemplates that no guilty plea will be entered when the defendant is not satisfied by the judge's reaction to the "tentative agreement" or indication of the maximum sentence the judge is tentatively willing to impose (subject to review of the presentence report). Hence, by its terms, R. 3:9-3(c) contemplates that the judge can reject a "tentative agreement" or sentence maximum desired by defendant before the plea is entered.
Defendant argues that the only permissible ground for rejecting a plea "would be the receipt of subsequent information contained in a presentence report which is contrary to representations made during the plea." Defendant relies on State v. Salentre, Sr., 242 N.J. Super. 108, 576 A.2d 36 (App.Div. 1990), a case involving his co-defendant father who had entered a negotiated guilty plea to a third degree conspiracy in this case. The same judge accepted the plea, but sua sponte vacated it shortly thereafter (which was shortly before the conference at which the judge rejected this defendant's similar plea). As we developed in Salentre, the judge vacated the plea based on his unarticulated impression that the father's plea was conditioned on a guilty plea being entered by all co-defendants, including defendant. Id. at 111, 576 A.2d 36. The judge wanted the defendants, including the father, to be ready for a joint trial. We reversed the trial judge's sua sponte vacation of the father's plea, but we did so because the negotiated plea had been entered and R. 3:9-3(e) therefore controlled the procedure for its review and rejection. Id. at 111-12, 576 A.2d 36. We concluded that the judge could not vacate a plea merely because other co-defendants had not entered guilty pleas as contemplated by the judge; defendant's negotiated plea was not conditioned on such other pleas. However, we did not suggest that the plea could not be subsequently rejected on the merits.
Here the trial judge did not accept the plea at all, and we know of no requirement that a judge must conditionally accept even a negotiated plea, and reject it only after review of a presentence *419 report, when the judge has a basis for rejecting the plea when tendered. The guilty pleas of co-defendants, the developments at pretrial conferences and the decisions on motions may make it clear to the judge that a given recommendation is unacceptable.[3] If so, the judge need not go through the charade of accepting a plea pending his review of the negotiated recommendation, particularly when the trial of co-defendants has been scheduled and the review would require either a severance or delay in scheduling the trial.
It is true that State v. Barboza, 115 N.J. 415, 422, 558 A.2d 1303 (1989), makes clear that R. 3:9-3 "limits the role of trial judges in plea discussions," and prohibits judges from modifying guilty pleas or fashioning dispositions when there is no basis to accept the plea offered. But neither Barboza nor any other case known to us requires a judge to initially accept even a negotiated guilty plea no matter the circumstances. Certainly, in the traditional case the judge's discretion is exercised at the time of sentencing (see e.g. R. 3:9-3(e); State v. Thomas, supra, 61 N.J. at 321-23, 294 A.2d 57), but the critical fact remains that "[t]he highest authority instructs that there is no absolute right to have a plea accepted, and sound discretion may lead to the rejection of such a plea." State v. Brockington, 140 N.J. Super. 422, 427, 356 A.2d 430 (App.Div.), certif. denied 71 N.J. 345, 364 A.2d 1077, cert. denied 429 U.S. 940, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976). This is clearly so where, pursuant to R. 3:9-3(c), the judge does not react favorably to the *420 "tentative agreement" or the maximum sentence acceptable to defendant for the offense to which defendant offers a plea.[4]
We read the record in this case as embodying the judge's decision under R. 3:9-3(c) that he would not accept a "tentative agreement" that defendant enter a plea to a third degree crime and, in any event, as embodying defendant's decision not to plead guilty in circumstances where the judge did not indicate a tentative willingness to impose a sentence defendant found to be acceptable. Accordingly, we find no basis for requiring the entry of a guilty plea to a third degree conspiracy under these circumstances.

II.
Defendant seeks reversal because the trial judge denied his pretrial motion for recusal. He contends that the rejection of his guilty plea, the sua sponte vacation of his father's plea and the judge's "characterization of the case" precluded the judge "from rendering fair and unbiased rulings on legal matters presented at trial...." We disagree.
Defendant, in essence, suggests that rejection of a guilty plea requires subsequent recusal of the judge at trial. Such a contention would unduly burden the necessary exercise of judicial discretion under R. 3:9-3(e) by the judge who is required to determine whether "the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel or by imposing sentence in accordance with the court's previous indications of sentence...." It might require transfer of *421 cases, and even improper severance if co-defendants could not be jointly tried before the same judge.
In State v. Walker, 33 N.J. 580, 591-92, 166 A.2d 567 (1960), our Supreme Court rejected an analogous contention. There the defendant claimed that the trial judge's acceptance of his non vult plea and denial of his petition for writ of habeas corpus (or motion to withdraw his plea) required recusal at a trial following the subsequent reversal of the habeas denial. Id. at 587, 166 A.2d 567. The Supreme Court disagreed, stating that:
Absent a showing of bias or prejudice, the participation of a judge in previous proceedings in the case before him is not a ground for disqualification. And the fact that a judgment resulting from previous proceedings is reversed on appeal is likewise not a sufficient ground for disqualification.
[Id. at 591, 166 A.2d 567 (citation omitted).][5]
There, as here, there was "no showing that the trial judge had any personal or private interest apart from the fulfillment of his judicial duties" and the recusal motion was properly denied. Id. at 592, 166 A.2d 567.
Again, the trial judge could not be expected to ignore all knowledge of the case learned from prior proceedings. In fact, in denying the recusal motion the judge acknowledged that his prior remarks were premised on such information and the plea discussions in his chambers,[6] but he added:

*422 This trial may reveal information quite contrary to what I've been provided to date. It would not be the first time I entered a courtroom with one thought in mind and left with another. And on the other hand, it may confirm everything the State has alleged. It may refute what I have heard from codefendants who have pled. I don't know what the trial will reveal. But unlike  I don't want to compare myself with others  but let me put it this way. What I am not going to pretend I didn't hear what I heard from codefendants. I'm not going to pretend I didn't hear the State's offers of proofs when plea negotiations went on. It would be as if I ignored you if you were to offer something that I thought was important in the course of a plea negotiation. I don't see that as the judge's function. What I recognize is that none of it's chiseled in stone. So, that's where I see it as we are now.
The judge also noted:
The Court recognizes that when any of these other people pled and that whatever statements they made, they weren't made under the aura of cross-examination. The validity of those statements wasn't tested. Maybe they would have said anything at all at the time of entering a plea in order to strike the best deal they could with the State.
As a judge, I recognize all of that. And I don't for one moment consider that the State has proven its case. But on the other hand, am I supposed to pretend I didn't hear them? This at least on its face, the State has a pretty fair case.
Should I be that [blind] and that devoid of any knowledge of the case? What does any judge do when he's got multiple defendants and he is left with a few? How do you avoid that? How can I ignore what I heard? Doesn't mean I passed on it and said it's absolutely correct. I don't know that to be so.
Defendant challenges several of the judge's rulings at trial and attacks the sentence the judge imposed as excessive. But defendant does not assert any specific claim of bias or prejudice in the trial or sentencing proceedings. Accordingly, we find no basis for reversing the conviction because of the denial of defendant's pretrial motions for recusal. See State v. Walker, supra, 33 N.J. at 591-92, 166 A.2d 567. See also Magill v. Casel, 238 N.J. Super. 57, 63-64, 568 A.2d 1221 (App.Div. 1990); State v. Pointer, 135 N.J. Super. 472, 480, 343 A.2d 762 (App.Div.), certif. denied 69 N.J. 79, 351 A.2d 7 (1975); State v. Flowers, 109 N.J. Super. 309, 311-12, 263 A.2d 167 (App.Div. 1970); Sinahopoulos v. Villa, 92 N.J. Super. 514, 517-18, 224 A.2d 140 (App.Div. 1966); Code of Judicial Conduct, Canon 3C(1)(a)(b); R. 1:12-1, -2.

*423 III
Defendant contends that the conspiracy count should have been dismissed on his pretrial motion. We disagree.
The fact that the judge found insufficient evidence before the grand jury to sustain the second degree substantive charges embodied in counts two and three does not mean that the proofs were insufficient to support a second degree conspiracy by virtue of the crimes defendant conspired to commit. The essence of the conspiracy is the illegal agreement, not the completed act. State v. LaFera, 35 N.J. 75, 86, 171 A.2d 311 (1961); State v. Soltys, 270 N.J. Super. 182, 186, 636 A.2d 1061 (App.Div. 1993).
Defendant contends that the trial judge erred by not granting his motion to dismiss because he was a juvenile during the first one and-a-half years covered by the conspiracy charge. He further contends that because the prosecutor, in summation, advised the jury that he "became responsible for the entire conspiracy including what went on before he joined it," he was convicted for conduct committed while a juvenile and, in any event, based on evidence not admissible against him. We need not explore at length the question of defendant's responsibility for the conduct of co-conspirators before defendant joined the conspiracy, see N.J.S.A. 2C:5-2b, c, f, because here the trial judge clearly instructed the jury that "defendant may not ... be held accountable for what the conspiracy, if it existed, did before he entered the conspiracy. His conduct may be measured from the time he entered it and his plan into the future." Moreover, in response to defendant's belated objection to the summation, the judge expressly told the jury that what the prosecutor had said was "not so" and that the judge's "contrary" instructions controlled.
With respect to argument addressed to the proofs concerning conspiratorial conduct during the period defendant was a juvenile, we note that defendant was charged as an adult for a conspiracy which continued for three and-one-half years beyond his eighteenth birthday during which defendant's participation was *424 substantial. He was responsible for his own acts and those of co-conspirators once he joined the conspiracy, see N.J.S.A. 2C:5-2f(1), and the fact that defendant may have participated as a conspirator before his eighteenth birthday does not immunize his conduct as an adult. Age in these circumstances does not constitute an element of the offense nor does it pose a jurisdictional bar. See N.J.S.A. 2C:4-11a(2), b. If defendant had asked for a special verdict concerning the duration of his participation, or its impact on the scope of the conspiracy as to the degree of crime involved, or if defendant had requested an instruction on consideration of the proofs relating to his age at various times, the issues before us would be different. However, the issue before us relates to a pretrial motion to dismiss the conspiracy count altogether, and in this context we find no basis to upset the conviction.

IV.
We find no basis to modify or reduce the sentence. State v. Ghertler, 114 N.J. 383, 387-88, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 363-65, 471 A.2d 370 (1984). Defendant argues, however, that his sentence was unduly disparate because:
In this matter, the defendant received the longest sentence of all the defendants, including his father, the most culpable individual. Twelve co-defendants received probation, four entered the pre-trial intervention program and two defendants' charges were dismissed.... Clearly, the sentence imposed on Mr. Salentre Jr. was disproportionate to the sentences given to all other co-defendants in the case. This is further evidence that the defendant's sentence is excessive and shocks the judicial conscience.[7]
Defendant, unlike his father, stands convicted of a second degree crime. He received a presumptive sentence and we reject defendant's contention that probation is appropriate. Given the duration of the conspiracy (a factor separate from its nature which *425 related to aggregate value and, therefore, an element of the offense), there was no basis for overcoming the presumption of imprisonment for a second degree crime. See e.g., State v. Jabbour, 118 N.J. 1, 7-8, 570 A.2d 391 (1990); State v. Kelly, 97 N.J. 178, 219-20, 478 A.2d 364 (1984). Moreover, disparity must be evaluated in terms of "real time," and defendant received no parole ineligibility term, while his father must serve two years before eligibility. Thus, defendant may serve less "real time" than his father. See N.J.S.A. 30:4-123.51a.
The sentence here was appropriate under the Code, and the record before us does not suggest that any co-defendant was convicted of a second degree crime or that any defendant so convicted had as much involvement or culpability as defendant. Hence, there is no record to support the claim that any disparity in sentence was undue or disproportionate. See State v. Lee, 235 N.J. Super. 410, 415-16, 563 A.2d 51 (App.Div. 1989).

V.
On July 6, 1990, three days before the trial was scheduled to commence, defendant's attorney moved to be relieved as counsel based on a perceived conflict resulting from his review of the witness list. While he had anticipated that two co-defendants, Ottaviani and Seavey, represented by private counsel, were going to testify against defendant as a result of their negotiated pleas, he claimed to be surprised that clients of the Public Defender were also to testify. In an affidavit prepared on an emergent application to this court confirming what was developed orally on the record, counsel stated:
Defendant Salentre Jr. is scheduled to start trial on the above charges on July 9, 1990. On July 3, 1990, defendant was supplied with the State's witness list which included the names of five co-defendants who pled guilty and were each represented by members of the Public Defender's office. Upon receiving this list, the undersigned contacted the Assistant Prosecutor and was advised that each of the five had been subpoenaed to testify against defendant Salentre Jr. and would inculpate him.
... The five co-defendants are Joseph Dillon, Rose Gankiewicz, Glenn Simonson, Darlene Kunsagi, and Christine Sickles. Each was represented by a member of *426 this same Public Defender's Office and each will testify against my client, Donald Salentre, Jr. Up until the point in time when the witness list was supplied, counsel had no idea of the State's intent to call these defendants as witnesses. Defendants and counsel are thus placed in a position of being adversaries against five other identically charged public defender clients.
The prosecutor acknowledged that some of the subpoenaed witnesses were still serving their probationary sentences, but argued that counsel should have perceived any problem at least two years earlier. She suggested that defense counsel was merely seeking to obtain a "lengthy postponement" of a case actually scheduled to be tried, that of the 100 witnesses subpoenaed only forty to fifty would actually testify, and that case law did not require the relief. The judge rejected application, stating:
It is hard for this Court to understand how in light of the language of State versus Bell [90 N.J. 163, 447 A.2d 525 (1982)] not to mention its predecessors, State versus Green [129 N.J. Super. 157, 322 A.2d 495 (App.Div. 1974)] and State versus Bellucci [81 N.J. 531, 410 A.2d 666 (1980)] that the Public Defender's Office can wait until the very last minute and attempt to throw a conflict of interest issue at a Court which has taken considerable pains to schedule a case for trial. This case was given a special trial date, and the Court anticipated a two to three week trial. It was sought to accommodate the Prosecutor, the Public Defender, and witnesses with regard to a trial date. The Court notes that on at least one or two occasions the case was put off because of witness problems or investigative problems in terms of ability to appear for trial, and it knows that it has intentionally arranged its calendar so as to dispose of this case which is a 1988 Indictment, a case which is more than two years old and is one of the three eldest cases on its calendar.
The judge also noted concern that the Public Defender had not considered the issue earlier, particularly in light of State v. Bell, 90 N.J. 163, 447 A.2d 525 (1982), but found significant that none of the witnesses were to be co-defendants at the trial.
The briefs before us address the issue only in the context of the pretrial ruling and do not consider developments at trial. However, based on our review of the record, it appears that only one of the five named co-defendants represented by staff attorneys of the Public Defender's regional office (office associates of defendant's counsel) actually testified. The testimony of this witness, Rose Gankiewicz, developed that she entered a negotiated guilty plea to the conspiracy and received an eighteen month sentence thereon, concurrent to a longer four year sentence she was then serving *427 and continued to serve. She also admitted being a heroin user at the time she began to cooperate with the State.
State v. Bell, supra, 90 N.J. 163, 447 A.2d 525, distinguished between private counsel and the Public Defender for purposes of joint representation of co-defendants at trial. Bell held "that there is no presumed or per se rule of conflict of interest where deputy public defenders represent multiple defendants." Id. at 171, 447 A.2d 525. However, the Court also noted that "should the circumstances demonstrate a potential conflict of interest and a significant likelihood of prejudice, the presumption of both an actual conflict of interest and actual prejudice will arise, without the necessity of proving such prejudice." Ibid.
This case does not deal with joint representation by Public Defender office associates of co-defendants on trial. Nor does it deal with Public Defender representation of a defendant in a case where the victim is a client in an unrelated matter. See State v. Muniz, 260 N.J. Super. 309, 616 A.2d 926 (App.Div. 1992). Here we deal with a question involving a co-defendant who became a witness after disposition of the case against her, and apparently after the Public Defender's representation had terminated.[8] However, the record in this case does not develop the issue beyond the abstract pretrial motion and defendant does not point to any event at trial in support of an actual conflict of interest or prejudice. But see State v. Araiza, 124 Idaho 82, 856 P.2d 872, 880 (1993) (witness never testified). Moreover, whether the Public Defender continued to represent the co-defendant at the time she testified at the trial may be relevant, and this point has not been developed in the record. Accordingly, we reject defendant's contention that his conviction must be reversed because of the denial of his counsel's pretrial motion to be relieved. However, we do not preclude defendant's application for post-conviction relief if he *428 contends that he was ultimately deprived of his constitutional right to counsel.

VI.
The judgment is affirmed.
NOTES
[1] Technically, the trial judge merged the three convictions together, but only count one remained a second degree crime.
[2] Furthermore, whatever may have happened at the conference of April 17, 1990, the parties could not bind the judge to accept any negotiated plea recommendation at the time of sentencing. See e.g., State v. Warren, supra, 115 N.J. at 447-48, 558 A.2d 1312; State v. Barboza, 115 N.J. 415, 422, 558 A.2d 1303 (1989); State v. Thomas, supra, 61 N.J. at 321, 294 A.2d 57; State v. Brockington, 140 N.J. Super. 422, 427, 356 A.2d 430 (App.Div.), certif denied 71 N.J. 345, 364 A.2d 1077, cert. denied 429 U.S. 940, 97 S.Ct. 357, 50 L.Ed.2d 310 (1976). R. 3:9-3(e).
[3] While the sentencing judge may not consider facts against a defendant without giving him a "fair opportunity to be heard on any adverse matters relevant to the sentencing," State v. Kunz, 55 N.J. 128, 144, 259 A.2d 895 (1969), our trial judges frequently perform plea review and sentencing functions after resolving evidentiary issues at the pretrial conference, R. 3:13-1(a), (b), accepting the guilty pleas of co-defendants and conducting the trial of co-defendants who exercise their right to trial. Moreover, while the defendant must himself supply the factual basis for the plea, State v. Mitchell, 126 N.J. 565, 581-82, 601 A.2d 198 (1992), the "defendant's admissions or factual version need not be the sole source of information for the court's sentencing decision ... [T]he court may look to other evidence in the record when making such determinations...." State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987).
[4] If the plea is entered, it is subject to the judge's review of the presentence report and defendant's ability to withdraw if the judge ultimately changes his mind. See R. 3:9-3(b)(e). The judge can indicate his view of maximum sentence only if defendant pleads to the whole indictment or to offenses which the prosecutor and defendant agree because the court cannot "dismiss or downgrade any change without the consent of the prosecutor." R. 3:9-3(c).
[5] Defendant points to our decision in State v. Salentre, Sr., supra, 242 N.J. Super. 108, 576 A.2d 36, in support of his claims directed to the judge's "lack of impartiality" and, in any event, his "appearance of partiality." We are filing today an opinion in State v. Salentre, Sr. which affirms the imposition of a five year sentence with a two year parole ineligibility term, the maximum under the negotiated plea. We read nothing in our prior opinion, 242 N.J. Super. 108, 576 A.2d 36, as requiring the judge to recuse himself by virtue of our reversal of his vacation of the plea, and rejected Salentre Sr.'s contention to the contrary. We similarly rejected the father's argument that the maximum sentence under the negotiated plea was excessive.
[6] After his recusal motion was denied, defendant renewed the motion following our reversal of the trial judge's vacation of his father's guilty plea in State v. Salentre, Sr., supra, 242 N.J. Super. 108, 576 A.2d 36.
[7] The sentences of all co-defendants whose cases were disposed by plea or trial are not before us. The judge noted that many were fugitives, many pled guilty and that many were really drug addicts who received probation. In any event, the record before us does not reflect the involvement or criminal record information of the co-defendants (except to the extent we know about Donald Salentre, Sr., as a result of a related appeal).
[8] If the testimony was incident to a negotiated disposition or sentencing was delayed in the hopes that the testimony would support a plea for leniency, the potential conflict would have been clearer and more easily and earlier identifiable.