# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4461-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARDELL BOYD,

    Defendant-Appellant.

_____

Submitted June 6, 2022 – Decided July 7, 2022

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Accusation No. 13-07-2228.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc R. Ruby, Designated Counsel, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This matter returns to us after a remand to the Law Division for an evidentiary hearing on defendant Cardell Boyd's petition for post-conviction relief (PCR). State v. Boyd, No. A-5372-17 (App. Div. Sept. 17, 2019). On remand, another PCR judge conducted an evidentiary hearing and denied PCR in an April 21, 2020 order and written opinion.

On appeal, defendant renews his claims that his plea counsel provided ineffective representation, specifically arguing:

> POINT [I]
>
> THE PCR COURT IMPROPERLY REVERSED THE BURDEN OF PROOF AT THE EVIDENTIARY HEARING, AND ALLOWED THE STATE TO OUT-POSITION MR. BOYD BY PROCEEDING FIRST AND CALLING [DEFENDANT]'S COUNSEL TO THE STAND FOR FRIENDLY AND DIRECT EXAMINATION HOSTILE TO [DEFENDANT]'S APPLICATION THUS SABATOGING A PETITION WHICH SHOULD HAVE BEEN GRANTED[1]
>
> POINT [II]
>
> THE PCR COURT COUNTENANCED [PLEA] COUNSEL'S UTTERLY ABYSMAL PERFORMANCE BY REACHING OUTSIDE THE RECORD, AND IMPROPERLY CREDITING COUNSEL'S PAST PERFORMANCES AND HELD THE EVIDENTIARY HEARING SCANT MOMENTS

---

[1] We have reorganized defendant's point headings to reflect the order in which we discuss each issue in our opinion.

AFTER SENTENCING [DEFENDANT] IN AN UNRELATED MATTER AND BASING THE DENIAL OF PCR ON OBSERVATIONS MADE OF [DEFENDANT] FROM OTHER CASES THEREBY DENYING MR. BOYD A FAIR HEARING AND INSTEAD PROTECTING [DEFENDANT]'S UNRELATED CONVICTION AND SENTENCE JUST METED OUT BY THE PCR COURT

Having considered the record developed at the evidentiary hearing, we disagree with all of defendant's arguments and affirm.

I.

We incorporate by reference the facts and procedural history set forth at length in our initial PCR opinion. See State v. Boyd, No. A-5372-17 (App. Div. Sept. 17, 2019) (slip op. at 2-8). We summarize certain of those facts, to provide context for the present appeal.

After defendant pled guilty to an Accusation that charged him with third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), the court sentenced him in accordance with the plea agreement to a 270-day period of jail time, required compliance with the registration requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, and subjected him to Parole Supervision for Life (PSL).[2]

---

[2] Defendant also pled guilty to a separate Accusation charging him with third-degree possession of a controlled dangerous substance within 1000 feet of a school, N.J.S.A. 2C:35-7, and received a concurrent 270-day custodial sentence for that offense.

Prior to entering his plea, defendant signed a plea agreement containing a supplement that addressed PSL. By circling "yes" next to each of the PSL-related questions, defendant confirmed that he knew PSL was "in addition to any other sentence," "that upon release from incarceration [he would] be supervised by the Division of Parole for at least [fifteen] years and [would] be subject to provisions and conditions of parole" that may prevent him from living "in a home with minor children," that if he violated PSL he could be incarcerated, and that he could be convicted for any violation of PSL, which could result in an additional sentence being imposed for "up to [eighteen] months."

At his plea hearing, defendant provided a factual basis for the endangering charge by admitting he had "sexual intercourse with [a] child" he knew was fourteen years old when he was twenty years old. Further, in colloquy with his plea counsel, defendant confirmed that he "had an opportunity to review the [p]lea [f]orms" and "initialed each page and signed the last pages of each section." The plea judge then reviewed the terms of the plea agreement with defendant. The judge stated, among other things, "[y]ou'd have to serve [PSL]" and confirmed that defendant would be placed on PSL "immediately" after sentencing.

The judge also confirmed that defendant read the plea agreement, that it reflected his plea "deal," and that its terms were "written accurately and completely in the plea papers that [defendant] and [his] [a]ttorney filled out." In response to the judge's questioning, defendant acknowledged that he read "through those questions very carefully and check[ed] all the answers." The judge also confirmed with defendant that "after [his] [a]ttorney went over everything with" defendant, he understood and signed the agreement. Defendant confirmed, and also stated that he was satisfied with his lawyer's services.

At sentencing, PSL was initially mentioned by the prosecutor who clarified that defendant could not be sentenced to probation because he was being placed on PSL. The only other reference to PSL was when the sentencing judge stated defendant was "subject to [PSL]" as part of his sentence.

Defendant did not appeal his conviction or sentence. In July 2016, however, he filed his first petition for PCR. In that petition, defendant argued that "the terms of PSL were not explained to [him]" and he "was not aware that programs such as Drug Court would be unavailable." Defendant later filed a brief and amended petition in which he expanded upon his earlier argument that his plea counsel failed to "adequately" explain PSL to him. He contended he

A-4461-19

was entitled to an evidentiary hearing and that his petition was not procedurally barred.

In his amended petition, defendant also asserted that he was diagnosed with a learning disability and attended special education classes while in school. He certified that he had been diagnosed with various mental health disorders, including depressive and anxiety disorders, post-traumatic stress disorder, and antisocial personality disorder. He also verified that his plea counsel "advised [him] that [he] had not paid her sufficient money for her to proceed to trial or to conduct any investigations in [the] matter." She also allegedly advised him to either accept the plea or proceed to trial with representation from the Public Defender's Office.

After considering the parties' contentions, the PCR judge denied defendant's petition and issued a nineteen-page written decision detailing the bases for his decision. In addressing the first prong of the two-part test for PCR articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984),[3] the PCR judge rejected defendant's claim that he was not advised of PSL.

_____

[3] To establish ineffective assistance of counsel, a convicted defendant must demonstrate that: 1) counsel's performance was deficient, and 2) the deficient performance actually prejudiced the accused's defense. Strickland, 466 U.S. at 687. The Strickland test has been adopted in New Jersey. See State v. Fritz, N.J. 42, 58 (1987).

Specifically, the PCR judge concluded defendant "was informed that PSL was a condition of his plea" because "the record evidences that [it] was discussed with defendant when he signed his plea form." In reaching that conclusion, the judge relied upon defendant's circling the answers to the questions about PSL on the plea form, his plea counsel's statement that she reviewed the plea form and defendant initialed and signed it, the plea judge having told defendant he would have "to serve [PSL]," and the fact that defendant confirmed the plea form was accurate and that he read it and understood its contents. The PCR judge also cited a reference to PSL that was made during sentencing, and stated that although "every minutia of [PSL] was not explained by the [plea] judge . . . [he was] satisfied the [plea] judge engaged in sufficient inquiry to ensure that defendant read and understood the terms of his plea and adequately discussed it with his attorney."

The judge also found that defendant failed to meet the second prong of Strickland, which required defendant to demonstrate there was reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different. He noted that defendant failed to offer any facts that established he suffered "legal prejudice" by accepting the plea. In addition, the PCR judge found the record showed that defendant entered into the

7

plea agreement "knowingly, intelligently, and voluntarily," and testified that he was satisfied with counsel's representation. He therefore concluded that defendant failed to establish a prima facie case of ineffective assistance of counsel based on his allegations about PSL.

The judge also rejected defendant's claim that his counsel failed to investigate his mental health. The judge observed that defendant did not provide any documentation pertaining to his alleged mental health issues or learning disability. He noted the evaluations contained in the record from Adult Diagnostic and Treatment Center at Avenel did not indicate that defendant suffered from any mental disorders or a diminished capacity that would impact his ability to understand the proceedings.

Applying our de novo standard of review, we concluded "the PCR judge incorrectly decided defendant's petition without conducting an evidentiary hearing because there were no facts in the record establishing that plea counsel ever discussed PSL with defendant and that neither the plea judge's nor the sentencing judge's comments about PSL provide any information about the consequences of PSL." Boyd, slip op. at 10. We explained that because defendant established a prima facie claim of ineffective assistance of counsel, he was entitled to an evidentiary hearing on the issue of whether he was

8

adequately informed by counsel about the consequences of PSL, and if he was not, whether he would not have accepted the plea offer if he had been properly advised.

We reached a different conclusion with respect to defendant's contentions about counsel's failure to investigate his alleged cognitive impairments. We specifically rejected those claims and concluded they lacked sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2). We affirmed substantially for the reasons detailed by the PCR judge in his written decision and specifically commented that "there was nothing in the record to support defendant's claim as to this contention." Boyd, slip op. at 14.

On remand, a different PCR judge scheduled an evidentiary hearing where both defendant and his plea counsel testified. The judge commenced the hearing by stating to the prosecutor "I think you go first, who is your first witness?" Both defendant's counsel and the prosecutor requested an off-the-record sidebar, which the judge granted, and the State proceeded with direct examination of defendant's plea counsel.

Defendant's plea counsel testified that she recalled representing defendant in 2012 and 2013, when she transitioned from the Public Defender's Office to private practice. She testified that defendant was a "very active participant in

negotiation," and "desperately" wanted to get out of jail. She also stated that she discussed the plea with defendant, and although she could not recall specifics of her discussions, she stated that it was her "standard practice" to review plea forms with her clients and read each question with them. Further, she testified that defendant asked several questions about his plea, specifically with respect to PSL and Megan's Law. She stated that she answered these questions and she recalled defendant being "very happy" with the plea outcome.

Defendant disputed that his plea counsel informed him of the PSL obligations attendant to his plea. He testified that at the time he pled guilty, he did not understand the implications of PSL, and that he only understood that he would have to participate in the County Supplemental Labor Service Program and register once a year for Megan's Law, N.J.S.A. 2C:7-1 to -23. He further stated that he did not recall the court or the prosecutor discussing the requirements of PSL at the plea hearing. He also testified that he did not recall going over each question on the plea form with counsel. Defendant further stated that he only met with counsel twice for brief periods, to which he attributed his family's inability to pay counsel's full fee.

At the conclusion of the hearing the judge placed the following comments on the record:

10

I just want you to know that I've had, neither of you were here, but I've had observations of him over the last four or five months, in regards to what we sentenced here today. In fairness, I have to -- I mean I'm going to say objectively what I've observed related to this matter, because in fairness to him, I just think I have to do it.

I know that doesn't give you any indication of what it is or what I'm doing with it, but I don't want you to be surprised by it when you know, specifically he's, on the plea, my recollection is when he was here with his mother, we spent a few hours in regards to the pretrial where I think he was subject to, and I got the file here, went through the pretrial -- and maybe we didn't execute the pretrial, but certainly we were going through it where he was subject to, I think he was sentenced to a life sentence in the even[t] he went to trial and lost.

And he, I shouldn't say, I think it was [twenty-five] years, it was [twenty] years he was exposed to, for a relatively minor offer. And he, I think he comprehended it, but my recollection of watching him was that his anger or maybe somewhat his misunderstanding was, that he, I said this, sir, you can be done with your sentence now and go forward from there, he understood, he still wanted to contest it. And it was in relation to I think he made admission to some aggressive combing of young girl's hair.

And when, after he rejected the plea, his mother was here. And stood him up and basically pushed him back before, and he remembered the plea from there. I may reference that in my decision. I don't know that it changes my decision. But I don't want either of you to be blind sided by me just referencing, because I, for me not to do it I think would be somewhat of a[n] ostrich

11

A-4461-19

not to say, I know something about him from there, in just treating objectively. It's going to be an objective recitation of what I saw.

I don't think it affects my decision, but I'm going to put it in there because I want, if there's another court that looks at it, I want them to know that I had familiarity with it. And I looked at [the first PCR judge's] opinion, and I have familiarity with him. I sentenced him this morning. So I have some background on him that I may put in my order. I don't want you to be shocked by that, okay?

[emphasis added.]

In his supplemental April 21, 2020 written opinion, the PCR judge rejected defendant's application and concluded that defendant had met neither the performance nor prejudice prong of the Strickland test, and rejected his argument that he did not understand the implications of PSL when he signed his plea offer. After assessing the testimony presented at the evidentiary hearing, the judge made various factual findings. First, the judge found defendant's plea counsel to be credible, and emphasized her description of defendant as a "very active participant in his defense, specifically in negotiation of the sentence in the instant matter." The judge was also satisfied that the fact that plea counsel had not been paid fully by defendant or his family did not influence the quality of counsel's representation.

The PCR judge next noted that it had observed defendant previously, as "he ha[d] appeared before th[e] court on several occasions," and found defendant's behavior was "similar" to his conduct in those previous matters. The judge also stated that while it was "not addressing [defendant]'s cognitive issues . . . , but [it nevertheless] express[ed] [its] observations."[4] The judge then described the same incident he referenced orally at the evidentiary hearing, when defendant's mother "pushed him back to the negotiating table to take the plea."

The PCR judge further stated "defendant may not like or have fully grasped the severity of [PSL] conditions when he accepted PSL as a condition of his plea agreement," but it found defendant to be "an engaged person," who, were he to plead to a crime, "would certainly understand the conditions of the plea." The judge found that counsel's performance fell within the "reasonable range of professional assistance." The judge specifically found that plea counsel "understood [the] sentence and explained to the defendant the significance of

---

[4] The judge incorrectly noted that we remanded the matter in part "because of [d]efendant's assertion that [plea counsel] failed to investigate his cognitive issues prior to the plea." As noted, however, we limited our remand for the court to conduct an evidentiary hearing on the issue of whether he was adequately informed about the consequences of PSL, see Boyd, slip op. at 14, and specifically determined his claims regarding counsel's failure to investigate his diminished mental capacity were of insufficient merit to warrant discussion in a written opinion.

the sentence to the best of her ability," and that her actions had not prejudiced defendant. The judge noted that he based this conclusion upon plea counsel's testimony, as well as his "observations of her the numerous times she has appeared before th[e] [c]ourt." This appeal followed.

## II.

Defendant argues the PCR judge improperly allowed the State to "out-position" defendant when he began the hearing with the State's direct examination of plea counsel. Defendant maintains that this order of the proceeding "improperly reversed the burden of proof at the evidentiary hearing," by depriving defendant of the opportunity to first "<u>hostilely</u> grill his attorney with leading questions" before the State was able to question her. (Emphasis in original). We conclude these arguments are without sufficient merit to warrant discussion in a written opinion, <u>R.</u> 2:1 1-3(e)(2), and offer the following brief comments.

We first note that defendant did not object to the order of questioning at the hearing, and on that basis alone, we need not consider this argument. <u>See</u> <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973). We nevertheless have reviewed the transcript of the remanded proceedings and are fully satisfied that the order in which plea counsel testified was inconsequential, as defendant had

14

a full and fair opportunity to cross examine, and re-cross examine, plea counsel, and did so comprehensively and zealously. Specifically, defendant's PCR counsel challenged plea counsel regarding her review of the "special conditions" that accompany PSL with defendant, as well as her specific recollection of whether she reviewed each question on the plea form with him. Simply put, we are not convinced that any sequencing irregularity related to the questioning of plea counsel affected the outcome of the remanded proceedings or prejudiced defendant in any way.

III.

Defendant further argues the court improperly based its decision on its observations of plea counsel's past performance and defendant's behavior in previous matters before the court, rather than the evidence adduced at the evidentiary hearing. He also contends the PCR judge should have recused himself as he sentenced defendant in an unrelated matter the morning of the evidentiary hearing.

As to his first argument, defendant maintains the PCR judge's comments on plea counsel's past performance and defendant's past behavior "reflect[ed] a commitment" to the outcome. He claims the judge "covered for" counsel's representation by invoking past instances of success, and that any observations

15

of defendant in past proceedings should have been disregarded because defendant was not a testifying witness whose credibility was at issue. We disagree with these arguments, as we are satisfied that the judge correctly denied defendant's claims of ineffective assistance of counsel and made sufficient factual findings based on the evidentiary hearing which are amply supported by the record.

The Sixth Amendment guarantees to persons accused of crimes the right to effective assistance of legal counsel in their defense. Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 687, 690.

As noted, to establish a claim that counsel was ineffective, a convicted defendant must satisfy the two-part test enunciated in Strickland: first, that counsel's performance was deficient; second, that the deficient performance actually prejudiced the accused's defense. Id. at 687-88; see also Fritz, 105 N.J. at 58 (adopting the Strickland standard in New Jersey). To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show "there is a reasonable probability that, but for counsel's errors, [defendant] would not

16

have pled guilty and would have insisted on going to trial." State v. DiFrisco, 137 N.J. 434, 457 (1994) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In other words, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." State v. O'Donnell, 435 N.J. Super. 351, 371 (App. Div. 2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

It is well-settled that a guilty plea must be entered into knowingly, intelligently, and voluntarily. State v. Johnson, 182 N.J. 232, 236 (2005). Before executing a plea, "the defendant must understand the nature of the charge and the consequences of the plea" including "consequences that are 'direct' or 'penal.'" Ibid. (quoting State v. Howard, 110 N.J. 113, 122 (1988)); see also R. 3:9-2 (requiring the defendant to complete and sign the appropriate plea forms before accepting a guilty plea). The consequences of PSL are penal in nature and as such, a defendant must be properly informed of them. See N.J.S.A. 2C:43-6.4(b); State v. Perez, 220 N.J. 423, 441 (2015).

As we noted in our unpublished decision, "a defendant may not fully understand 'the parameters of [a] plea' if neither the court nor counsel explains the ramifications of PSL." Boyd, slip op. at 12 (quoting State v. J.J., 397 N.J. Super. 91, 99-100 (App. Div. 2007)). Accordingly, "[w]hereas the court need

17

not explain every possible consequence of a plea, it cannot simply utter a label such as '[PSL] requirements.' Such a disclosure does not ensure that defendant fully understands the parameters of his plea." J.J., 397 N.J. Super. at 99.

The obligation to ensure that counsel has discussed PSL with a defendant before he enters a plea, and defendant understands its consequences, is not satisfied by "solely rely[ing] on a written plea form when taking a plea." State v. Williams, 342 N.J. Super. 83, 91 (App. Div. 2001) (citing State v. Kovack, 91 N.J. 476,484 n.1 (1982)). An attorney's role in assisting the defendant to understand conditions of the plea requires thorough review of each question on the plea form. See State v. Antuna, 446 N.J. Super. 595, 601 (App. Div. 2016) (concluding an attorney's failure to review a question on the plea form addressing immigration consequences amounted to deficient performance).

Guided by these principles, we are satisfied that the PCR judge on remand correctly rejected defendant's petition. The judge credited the testimony of plea counsel, who stated that it was her practice to review the terms of PSL with all clients and read through each question on the plea forms. Plea counsel's testimony is fully supported by the documentary evidence. On this score, defendant circled "yes" in response to five questions relating to PSL and the

attendant conditions on the supplement to the plea form, "Additional Questions

for Certain Sexual Offenses." One of those questions read:

> [B]eing sentenced to parole supervision for life means that upon release from incarceration or immediately upon imposition of a suspended sentence you will be supervised by the Division of Parole for at least [fifteen] years and will be subject to provisions and conditions of parole, including conditions appropriate to protect the public and foster rehabilitation, such as, but not limited to, counseling, Internet access or use, and other restrictions which may include restrictions on where you can live, work, travel or persons you can contact[.]

As noted, the remaining questions explained that PSL conditions "could include

restrictions on residing in a home with minor children," and that any violation

of PSL could result in a prison term of twelve to eighteen months.

Plea counsel further testified that although (understandably) she could not

recall specifics of her conversations with defendant from 2013, "under the

circumstances with [defendant's] charges," she would have informed him of the

implications of PSL. She also noted that the judge reminded defendant that he

was being placed on PSL at his plea hearing. At the conclusion of the

evidentiary hearing, the judge clearly credited plea counsel's testimony over

defendant's self-serving statements that he was never told about PSL until his

sentencing hearing, and there was ample support in the record for that finding.

Although the judge made brief comments with respect to counsel's past performance, it is clear he impartially evaluated defendant's claims. While we note it would have been better practice to avoid such observations, the judge's critical findings were based upon counsel's practice and procedure testimony, as well as the documentary evidence supporting the finding that defendant understood the implications of PSL prior to accepting the plea offer. Further, we understand the judge's comments regarding defendant's past behavior as an attempt to be transparent. The issue of defendant's cognitive deficiencies was outside the scope of our limited remand in any event.

Defendant does not address, let alone criticize, the judge's conclusion on the prejudice prong of Strickland. This omission alone is sufficient for us to reject the claims. See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390 (App. Div. 2021) (stating that issues not briefed on appeal are deemed waived). We are again satisfied, however, that the record supports the judge's finding that counsel's performance, assuming it was deficient (which we do not conclude), did not prejudice defendant.

At his plea hearing, defendant admitted to having vaginal intercourse and engaging in sexual conduct with a fourteen-year-old girl, and he has offered nothing to suggest that this factual basis was incorrect or false. Defendant pled

guilty to third-degree endangering the welfare of a child after waiving his right to indictment by a grand jury. That charge itself carried a maximum prison term of five years. Without the benefit of the plea, defendant faced the possibility that the third-degree charge would be increased to a second-degree endangering offense, which carried a maximum term of ten years' imprisonment, as well as mandatory PSL. It is clear to us that any decision to reject the plea agreement, for which defendant served only 270 days in jail, and which included a concurrent term for his CDS charge, would not have been "rational under the circumstances." O'Donnell, 435 N.J. Super. at 37.

We also reject defendant's argument that the PCR judge was obligated to recuse himself because he sentenced defendant on an unrelated matter before conducting the PCR evidentiary hearing later that same day. By allowing the judge to preside over both proceedings, defendant claims he was prejudiced, and the result of the evidentiary hearing was consequently "disastrous."

Where a PCR judge "seems committed to the outcome," we have held that a matter should be assigned to another judge on remand. State v. Thompson, 405 N.J. Super. 163, 172 (App. Div. 2009) (citing R. 1:12-1(d)). Our Supreme Court has cautioned, however, "that [a]bsent a showing of bias or prejudice, the participation of a judge in previous proceedings in the case before him is not a

21

ground for disqualification." State v. Walker, 33 N.J. 580, 591-92 (1960). Where there can be "no showing that the trial judge had any personal or private interest apart from the fulfillment of his judicial duties," a judge need not recuse his or herself. State v. Salentre, 275 N.J. Super. 410, 421 (App. Div. 1994).

We first note that defendant did not file an application before the PCR court seeking the PCR judge's recusal, and we could reject his argument on that basis alone. See State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006). We briefly address it, however, and conclude there is no evidence in the record to suggest the judge had "any personal or private interest" in the outcome. See Salentre, 275 N.J. Super. at 421. We are satisfied that the PCR judge's decision was based upon the facts adduced at the evidentiary hearing, in which the judge credited plea counsel's testimony over defendant's, as informed by defendant's plea forms, and the plea and sentencing transcripts.

To the extent we have not specifically addressed any of defendant's arguments, it is because we have concluded any such contention was of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4461-19